PEOPLE v ALTER

Docket No. 228005. Submitted December 4, 2002, at Detroit. Decided January 24, 2003, at 9:05 A.M.

Robert J. Alter, charged in the Wayne Circuit Court, Vonda R. Evans, J., with four counts of criminal sexual conduct in the first-degree (CSC I) and two counts of criminal sexual conduct in the second degree (CSC II), was convicted by a jury of two counts of having sexual intercourse under the pretext of medical treatment (as lesser included offenses of two of the CSC I counts) and of both counts of CSC II, but acquitted of two counts of CSC I. The defendant appealed.

The Court of Appeals *held*:

1. The trial court erred in instructing the jury on the offense of sexual intercourse under the pretext of medical treatment, and the error requires reversal of the defendant's convictions of those offenses. The defendant was charged with CSC I under two distinct theories: sexual penetration accomplished by physical force causing personal injury (MCL 750.520b[1][f][i]) and sexual penetration accomplished by medical treatment recognized as unethical or unacceptable and causing personal injury (MCL 750.520b[1][f][iv]). Sexual intercourse under the pretext of medical treatment is not a necessarily included offense of CSC I under either theory because the offense of sexual intercourse under the pretext of medical treatment is not one that must be committed as part of CSC I under either theory. Alternatively, if sexual intercourse under the pretext of medical treatment could be viewed as a cognate lesser offense of CSC I under either of the prosecution's theories, the statute on lesser offenses (MCL 768.32[1]) does not authorize consideration of cognate lesser offenses.

2. There was sufficient evidence to support the defendant's convictions of CSC II. Pursuant to MCL 750.520c(1)(f), a person is guilty of CSC II if the person engaged in sexual contact with another person and if the person causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. MCL 750.520b(1)(f) defines force or coercion to include the circumstance where the actor overcomes the victim through the actual application of physical force or physical violence and the circum-

stance where the actor engages in the medical treatment or examination of the victim in a manner or for purposes that are medically recognized as unethical or unacceptable. The evidence showed that the defendant engaged in sexual contact with the victim that caused her personal injury and that the defendant used force or unethical or unacceptable medical treatment to accomplish sexual contact.

3. The defendant did not object to, and thus failed to preserve for appellate review, the trial court's jury instruction regarding the personal injury/mental anguish element of CSC II. Plain error affecting the defendant's substantial rights did not result from the trial court's instructing the jurors that if they find that the complainant was especially susceptible to the injury at issue, the special susceptibility does not constitute cause freeing the defendant from guilt.

4. The trial court did not abuse its discretion in denying the defendant's motion for a mistrial. The motion was premised on a claim that the prosecutor improperly bolstered the credibility of the victim with the testimony of a detective and that the prosecutor improperly told the jury in her opening statement that they would hear an admission by the defendant that he said that he could go to jail for what he did to the victim. While the prosecutor misspoke that the jurors would hear the defendant make such an admission, it is apparent that the prosecutor meant to inform the jurors that they would hear from the victim about the defendant's admission in conversation with the victim. The error was not so prejudicial that it impaired the defendant's right to a fair trial. With respect to the detective's testimony, the trial court struck the portion that the defendant claimed merely vouched for the victim's credibility.

Convictions of CSC II affirmed; convictions of sexual intercourse under the pretext of medical treatment reversed.

RAPE — CRIMINAL SEXUAL CONDUCT — SEXUAL INTERCOURSE UNDER PRETEXT OF MEDICAL TREATMENT

The offense of sexual intercourse under the pretext of medical treatment is not a necessarily included lesser offense of criminal sexual conduct in the first degree involving sexual penetration accomplished by physical force causing personal injury or involving sexual penetration accomplished by medical treatment recognized as unethical or unacceptable and causing personal injury (MCL 750.90, 750.520b[1][f][i], [iv]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael E. Duggan*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of

Research, Training, and Appeals, and *Mary DuFour Morrow*, Assistant Prosecuting Attorney, for the people.

*Jeanice Dagher-Margosian* for the defendant.

Before: Bandstra, P.J., and Zahra and Meter, JJ.

Bandstra, P.J. Defendant was convicted by a jury of two counts of sexual intercourse under the pretext of medical treatment, MCL 750.90, and two counts of second-degree criminal sexual conduct, MCL 750.520c(1)(f). He was sentenced to concurrent terms of two to fifteen years' imprisonment for the convictions. Defendant appeals his convictions as of right. We affirm defendant's convictions of second-degree criminal sexual conduct and reverse his convictions of sexual intercourse under the pretext of medical treatment.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant's convictions arise from sexual relations that he had with the victim while he was her therapist. In 1984, defendant was recommended to both the victim and her husband for treatment of their alcoholism. At the time, the victim was also depressed and had an eating disorder, suffering from anorexia and bulimia. The victim and her husband jointly saw defendant together for a short period and then continued to see him separately until 1994.

According to the victim's testimony at trial, she began her therapy with defendant after having "something like a nervous breakdown." At that time, her relationship with her husband was "difficult" because

he was verbally abusive. She also had concerns regarding her husband's fidelity.

The victim testified that she initially saw defendant once a week in the afternoons, but that she eventually began to see him three times a week because defendant believed that she "needed more help" than could be provided in a single weekly session. At defendant's suggestion, the victim also changed to evening appointments. During the last four to five years of therapy, and for a period thereafter, she met defendant in various hotels to have sex with him.

The victim explained that defendant wanted her to meet with him at these hotels because he wanted to "teach [her] how [she was] supposed to have sex with men," because he believed that the "failures" in her life stemmed from the fact that she "wasn't doing the right things for men to make them happy." According to the victim, these meetings with defendant occurred "[o]nce a week for years." The victim testified that she did not begin to have sex with defendant, however, "until [she] totally trusted him," which was approximately five years into her therapy. The victim further testified that she had been plagued with "trust issues" her entire life, but that defendant "finally got [her] to trust him, which was probably the first time [she] totally trusted any male." She also testified that once defendant gained that trust, he began to control her.

The victim denied that she had any romantic feelings toward defendant while in therapy with him, but stated that she believed that defendant had romantic feelings toward her. She admitted, however, that after she discontinued therapy with defendant they contin-

ued to see one another until she reported defendant's conduct to the state police and a licensing agency.

As a result of the victim's reports, defendant was charged, under alternative theories, with four counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b, and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c. Following trial, the jury acquitted defendant of two of the charged counts of CSC I, but returned guilty verdicts on the lesser included offense of sexual intercourse under the pretext of medical treatment on the remaining CSC I counts. The jury found defendant guilty of CSC II as charged.

## II. LESSER OFFENSE INSTRUCTION

Defendant first argues that the trial court erred so as to require reversal in instructing the jury on the lesser offense of sexual intercourse under the pretext of medical treatment. We agree.

Defendant was originally charged with CSC I under two distinct theories for each of the four counts: (1) sexual penetration accomplished by physical force causing personal injury (mental anguish), MCL 750.520b(1)(f)(i); and (2) sexual penetration accomplished by "medical treatment . . . recognized as unethical or unacceptable" and causing personal injury (mental anguish), MCL 750.520b(1)(f)(iv). Before trial, the prosecutor requested that the trial court instruct the jury on the lesser offense of sexual intercourse under the pretext of medical treatment with respect to these counts. MCL 750.90 provides:

> Any person who shall undertake to medically treat any female person, and while so treating her, shall represent to

such female that it is, or will be, necessary or beneficial to her health that she have sexual intercourse with a man, and shall thereby induce her to have carnal sexual intercourse with any man, and any man, not being the husband of such female, who shall have sexual intercourse with her by reason of such representation, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years.

Over defendant's objection, the trial court granted the prosecutor's request on the basis that sexual intercourse under the pretext of medical treatment was a necessarily included lesser offense of the charged CSC I offenses. As previously noted, although acquitted of two counts of CSC I, defendant was convicted of sexual intercourse under the pretext of medical treatment as lesser offenses of the remaining CSC I counts.

Defendant asks this Court to vacate these convictions on the ground that the trial court committed instructional error because the offense of sexual intercourse under the pretext of medical treatment is not a necessarily included lesser offense of CSC I under MCL 750.520b(1)(f)(i) or (iv). We agree. A necessarily included offense is one that must be committed as part of the greater offense; it would be " 'impossible to commit the greater offense without first having committed the lesser.' " *People v Bearss*, 463 Mich 623, 627; 625 NW2d 10 (2001), quoting *People v Jones*, 395 Mich 379, 387; 236 NW2d 461 (1975). In other words, if a lesser offense is a necessarily included offense, the evidence at trial will always support the lesser offense if it supports the greater. *People v Veling*, 443 Mich 23, 36; 504 NW2d 456 (1993).

That is not the case here. A person could be convicted of CSC I under the sections for which defendant was charged with evidence that would not support a

conviction of sexual intercourse under the pretext of medical treatment. MCL 750.520b(1)(f)(i) proscribes any sexual penetration accomplished by physical force that causes personal injury, an offense that can certainly be committed outside the context of treatment, as is required for a conviction under MCL 750.90. Similarly, while MCL 750.520b(1)(f)(iv) requires that sexual penetration be accomplished by "medical treatment . . . recognized as unethical or unacceptable," such treatment would not necessarily involve inducing a patient to have sexual intercourse through a representation that it was necessary or beneficial for health reasons, as is required for a conviction under MCL 750.90.

On appeal, the prosecutor does not argue that the trial court was correct in considering sexual intercourse under the pretext of medical treatment to be a necessarily included lesser offense of CSC I. Instead, the prosecutor argues that the instruction on sexual intercourse under the pretext of medical treatment was correctly provided to the jury as a cognate lesser offense of the CSC I charges. We disagree.

This issue is controlled by the Supreme Court's recent opinion in *People v Cornell*, 466 Mich 335; 646 NW2d 127 (2002).[1] There, the Court reasoned that the

---

[1] We recognize that *Cornell* did not itself involve a cognate lesser offense instruction. Instead, the issues presented concerned the trial court's failure to give a requested necessarily included lesser offense misdemeanor instruction. *Id.* at 337, 360. Accordingly, under Supreme Court precedents establishing that "statements concerning a principle of law not essential to determination of the case are obiter dictum," *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597; 374 NW2d 905 (1985), and that "obiter dicta lacks the force of adjudication and is not binding under the principle of stare decisis," *People v Borchard-Ruhland*, 460 Mich 278, 286 n 4; 597 NW2d 1 (1999), *Cornell* might not be considered a binding precedent. However, the Supreme Court itself has summarized *Cornell* as standing

statute on lesser offenses, MCL 768.32(1), does not authorize consideration of cognate lesser offenses. *Cornell, supra* at 353-359. Because the instant case was pending on appeal when *Cornell* was decided and this issue was properly raised and preserved, *Cornell* controls. *Id.* at 367. Accordingly, the jury should not have been instructed on the cognate lesser offense of sexual intercourse under the pretext of medical treatment, and defendant's convictions of that offense must be reversed.

In light of this decision, we need not consider the remainder of defendant's arguments concerning his convictions under the statute prohibiting sexual intercourse under the pretext of medical treatment.

### III. SUFFICIENCY OF THE EVIDENCE (CSC II)

Defendant next argues that there was insufficient evidence to sustain his CSC II convictions. When reviewing a sufficiency of the evidence argument in a criminal case, we view the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable

---

for the proposition that MCL 768.32(1) "only permits instructions on necessarily included lesser offenses, not cognate lesser offenses." *People v Reese*, 466 Mich 440, 446; 647 NW2d 498 (2002). Further, the Supreme Court has remanded cases involving cognate lesser offense instructions to our Court for consideration in light of *Cornell*. See *People v Hunt*, unpublished opinion per curiam of the Court of Appeals, issued December 13, 2002 (Docket No. 222668). In light of those Supreme Court actions and an older Supreme Court directive that "all that is necessary for a decision to be authoritative is to show application of the judicial mind to the subject," *Detroit v Pub Utilities Comm*, 288 Mich 267, 299; 286 NW 368 (1939), we do not feel at liberty to conclude that *Cornell* is anything less than binding precedent with respect to the cognate lesser offense issue.

doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

Defendant was convicted of two counts of CSC II in violation of MCL 750.520c(1)(f), which provides, in pertinent part:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
>
>                  *     *     *
>
> (f) The actor causes personal injury to the victim and force or coercion is used to accomplish the sexual contact. Force or coercion includes but is not limited to any of the circumstances listed in section 520b(1)(f)(i) to (v).

In pertinent part, MCL 750.520b(1)(f) provides:

> (i) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
>                  *     *     *
>
> (iv) When the actor engages in the medical treatment or examination of the victim in a manner or for purposes which are medically recognized as unethical or unacceptable.

Contrary to defendant's claim, there was sufficient evidence to convict him of the two charged counts of CSC II under MCL 750.520c(1)(f). With respect to the charged conduct of May 5, 1993, the victim testified that while she and defendant were discussing her husband's verbal abuse during their session, defendant unbuttoned her blouse and began fondling her breast. She further testified that while fondling her breast, he placed her hand on his penis and told her that if she would leave her husband she would not

feel so "trapped." The victim denied ever giving defendant permission to have such sexual contact with her. This was sufficient evidence that defendant used actual force to accomplish sexual contact. MCL 750.520b(1)(f)(i); see also *People v Carlson*, 466 Mich 130, 140; 644 NW2d 704 (2002) (noting that "the prohibited 'force' encompasses the use of force against a victim to either induce the victim to submit to sexual penetration or to seize control of the victim in a manner to facilitate the accomplishment of sexual penetration without regard to the victim's wishes"). Alternatively, the coercion element was satisfied because defendant, as the victim's therapist, engaged in sexual contact with the victim through the use of an unethical or unacceptable manner of treatment. See *People v Regts*, 219 Mich App 294, 297-298; 555 NW2d 896 (1996) (under the criminal sexual conduct statute, "medical treatment" includes care by psychologist or other health-care professional).

With respect to the charged conduct occurring on January 9, 1993, the victim testified that while again fondling her breast as the two talked during a session, defendant took her hand and placed it on his penis, then moved her hand about his genitals in a manner causing her to fondle his penis. The victim denied that she gave defendant permission to fondle her breast or have her fondle his penis. As with the evidence concerning the previously discussed conduct, this was sufficient evidence that defendant used actual force or an unethical or unacceptable manner of treatment to accomplish sexual contact.[2]

---

[2] There is no merit to defendant's contentions, here and elsewhere, that the trial court erred when it failed to separately define certain elements of CSC II and instead referred to its instruction regarding those elements as

IV. SUPPLEMENTAL INSTRUCTION

Defendant next argues that the trial court erred when it gave the jury a supplemental instruction on the personal injury/mental anguish element of CSC II. We disagree.

Contrary to defendant's assertion, the record does not support his contention that he objected to the prosecutor's request for the contested special instruction. Thus, defendant has not preserved this issue for appellate review. *People v Snider*, 239 Mich App 393, 420; 608 NW2d 502 (2000). We review unpreserved claims of instructional error for plain error affecting the defendant's substantial rights. *Id.*, citing *People v Carines*, 460 Mich 750, 761-764, 774; 597 NW2d 130 (1999).

After instructing the jury on personal injury/mental anguish in accordance with CJI2d 20.9(2) and (3) in connection with the instruction on the elements of CSC I, the trial court gave the jury the following supplemental instruction:

> [T]he prosecution does not have to show that defendant's conduct was the only cause of the complainant's mental anguish. If you find that the complainant was especially susceptible to the injury at issue, the special susceptibility does not constitute an independent cause freeing defendant from guilt. The prosecution has sustained its burden of proof if you find that defendant was the cause of at least part of the victim's total injury.

---

they had been set forth in the instructions on the elements of CSC I. As the prosecution points out, trial courts, while instructing on recurring elements, routinely refer back to previous instructions to avoid duplication. In any case, it is well established that jury instructions are read in their entirety, and not in isolation, "to determine if error occurred requiring reversal." *People v Gaydosh*, 203 Mich App 235, 237; 512 NW2d 65 (1994). No error occurred in this case.

The trial court also incorporated this supplemental instruction in its instruction on the elements of CSC II. As the prosecution points out, the trial court properly instructed the jury in accordance with the law. See *People v Brown*, 197 Mich App 448, 451; 495 NW2d 812 (1992) (noting that "a defendant 'takes his victim as he finds [her]' and therefore any special susceptibility of the victim to the injury at issue does not constitute an independent 'cause' exonerating [the] defendant"). Thus, plain error has not been shown.

### V. MISTRIAL

Defendant next argues that the trial court erred in denying defendant's motion for a mistrial premised upon his claim that the prosecutor improperly told the jurors in her opening statement that they would hear defendant "admit words to the effect" that he could go to jail for what he had done to the victim, because she knew the tape recordings of the alleged admission would not be admitted into evidence. Further, defendant argues that the prosecutor compounded that error by eliciting testimony from a detective that bolstered the credibility of the victim.

Defendant preserved this issue by moving for a mistrial below. The denial of a motion for a mistrial is reviewed for an abuse of discretion. *People v Manning*, 434 Mich 1, 7; 450 NW2d 534 (1990). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant . . . and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

The trial court did not abuse its discretion in denying defendant's motion for a mistrial. The prosecutor accurately stated in her opening statement that the

tape recordings were not admissible and it is clear that she misspoke by further stating that "you will hear [defendant] admit words to the affect [sic] that I could go to jail for what I did to you." It is apparent that the prosecutor meant to inform the jury, correctly, that they would hear from the victim who would testify about her conversations with defendant in which he admitted that he could go to jail for what he did to her. This error on the part of the prosecutor became apparent to the fact-finder when no tape recordings were placed into evidence. It was not so prejudicial that it impaired defendant's right to a fair trial.

With respect to the detective's testimony, the trial court struck the portion that defendant claims merely vouched for the victim's credibility. The detective's testimony regarding the inaudibility of the tape recordings was an innocuous account that was not prejudicial. Further, notwithstanding that the tape recordings were not admissible as substantive evidence, there was nothing improper about the prosecutor eliciting testimony from the detective about the tape recordings themselves.

We affirm defendant's convictions of CSC II. We reverse defendant's convictions of sexual intercourse under the pretext of medical treatment.