# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TEVIN JAMARIOND NERO,

      Defendant-Appellant.

UNPUBLISHED
March 12, 2015

No. 319320
Kent Circuit Court
LC No. 13-000488-FC

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his conviction for armed robbery, MCL 750.529. Because the prosecutor presented sufficient evidence to support defendant's conviction and defendant was not entitled to a mistrial, we affirm.

On December 10, 2012, defendant, Robert Calloway, and Terrance Ashford robbed Christopher Tymczyn. Specifically, according to Tymczyn's testimony, at about 10:00 p.m., three men began to follow him when he got off a bus, so he stepped off the sidewalk, onto the grass, to allow them to pass. Instead one of the men, later identified as defendant, asked Tymczyn: "Are you scared?" and "Do you want to scrap?" While they were talking, Tymczyn noticed that one of the men had a gun, though according to testimony from Ashford and Calloway it was actually a BB gun. Tymczyn told the men he did not want to "scrap" and he continued walking. One of the men continued to harass Tymczyn by asking for his telephone. Tymczyn then started to run, and the three men ran after him. When Tymczyn slowed down, Calloway came up to Tymczyn, punched him in the head, and took Tymczyn's headphones. Ashford also came from behind and "pistol whipped" Tymczyn with a BB gun. Defendant, Ashford, and Calloway then ran away. Tymczyn called 911. Defendant and Ashford were soon stopped by the police. Tymczyn identified defendant and Ashford as two of the men involved in the attack.

On appeal, defendant argues insufficient evidence was presented at trial to convict him of armed robbery. In particular, defendant does not dispute whether an armed robbery was committed, nor does he deny that he was with Ashford and Calloway at the time of the robbery. Instead, defendant's contention on appeal is that he did not assist or encourage the commission of the crime. He maintains he was merely present for the robbery and that, even under an aiding and abetting theory, his mere presence cannot support an armed robbery conviction.

-1-

We review a challenge to the sufficiency of the evidence in a criminal case de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). The test for determining the sufficiency of the evidence is "whether the evidence, viewed in a light most favorable to the [prosecution], would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014). Further, this Court defers to the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses, and we resolve any conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"The elements of armed robbery are: (1) an assault and (2) a felonious taking of property from the victim's presence or person (3) while the defendant is armed with a weapon." *People v Smith*, 478 Mich 292, 319; 733 NW2d 351 (2007). A person may be held liable for armed robbery under an aiding and abetting theory. See MCL 767.39. Specifically, "[o]ne who procures, counsels, aids, or abets in the commission of an offense may be convicted and punished as if he committed the offense directly." *People v Norris*, 236 Mich App 411, 419; 600 NW2d 658 (1999), citing MCL 767.39.

> The elements of aiding and abetting are (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010) (citation omitted) (alteration in original)].

Aiding and abetting encompasses "any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). In contrast, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to establish that a defendant aided or assisted in the commission of the crime." *Norris*, 236 Mich App at 419-420. An aider and abettor's state of mind may be inferred from all the facts and circumstances. *People v Carines*, 460 Mich 750, 758; 597 NW2d 130 (1999). "Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id.* (citation omitted).

In this case, although defendant did not personally take Tymczyn's property or conduct the assault, there is nonetheless sufficient evidence to support the conclusion that he was not merely present but rather an active participant in events, and he is thus guilty of aiding and abetting the armed robbery. That is, before the robbery, defendant was well aware of Ashford's intent because Ashford suggested to defendant and Calloway that they "do something stupid" and rob someone. Knowing Ashford's intent, defendant participated in following Tymczyn and he confronted Tymczyn, asking him whether he was "scared" and if he wanted to "scrap." Indeed, following Ashford's suggestion to rob someone, it was defendant who first made contact with Tymczyn. Having initiated contact, defendant remained while Ashford and Calloway

assaulted Tymczyn, and defendant then fled with them while they were in possession of Tymczyn's property. Further, while in their testimony Ashford and Calloway tried to downplay defendant's involvement in the crime, Ashford testified at trial that when he pleaded guilty to unarmed robbery in connection with these events, he told the presiding judge that defendant helped him in the robbery. Viewing the evidence in a light most favorable to the prosecution, and drawing all reasonable inferences in support of the verdict, a reasonable juror would be warranted in finding beyond a reasonable doubt that defendant performed acts or gave encouragement that assisted in the commission of the crime and that, at the time of assistance, he intended the commission of the crime or had knowledge the principal intended its commission. See *Nowack*, 462 Mich at 399-400. Defendant's conviction is supported by sufficient evidence.

Next, defendant claims he was denied a fair trial because the trial court failed to declare a mistrial after a juror revealed an extraneous influence. In particular, defendant maintains that the trial court should have declared a mistrial after a juror revealed that that she had been "frightened" when she and the other jurors were approached near the elevator by three men who commented in the jurors' hearing on the racial composition of the jury. Alternatively, defendant asserts that, at a minimum, the juror in question should have been excused or the other jurors questioned.

At trial, although defendant did not specifically move for a mistrial, he objected to "going with this jury panel." Assuming this objection can be seen as a request for a mistrial, we review a trial court's decision to grant or deny a mistrial for an abuse of discretion. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). Likewise, we review for an abuse of discretion a trial court's decision regarding whether to remove jurors. *People v Unger*, 278 Mich App 210, 259; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id.*

"A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (citation omitted). A defendant's right to a fair trial includes a right to a jury that is "fair and impartial." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id.* Consequently, "[t]he trial court must take appropriate steps to ensure that jurors will not be exposed to information or influences that could affect their ability to render an impartial verdict based on the evidence admitted in court." *People v Jackson*, 292 Mich App 583, 592; 808 NW2d 541 (2011).

However, a new trial is not required every time a juror has been placed in a compromising situation. *Id.* at 592-593. Rather, a defendant requesting reversal based on extraneous influences on the jury must establish two points. "First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict." *Budzyn*, 456 Mich at 88-89 (internal citations omitted). "Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* at 89.

In this case, the record shows that, after the first day of trial, while the jury was waiting for the elevator, a group of three African-American men approached them. One of the men asked, "What is this, the eighteen hundreds? There's only one black person on the jury." Juror #14 felt intimidated by this statement and brought it to the court's attention. The juror was questioned by the prosecution and defendant. The juror became emotional when recounting the incident, but she told the trial court that she could continue to be a juror in this case and she indicated that none of the other jurors appeared to have been intimidated by the incident. After speaking with Juror #14, the trial court asked all the jurors whether they had any additional concerns that would affect them from being fair and impartial and none of the jurors raised their hands or otherwise expressed any concerns.

On these facts, the trial court did not abuse its discretion by failing to grant a mistrial, or to take other action, based on Juror #14's disclosure to the court. Specifically, the jury was exposed to an extraneous influence insofar as the encounter occurred outside the trial court proceedings, but the statement was not related to a material aspect of the case and, viewed objectively, this isolated incident did not create a real and substantial possibility of affecting the jury's verdict. See *Budzyn*, 456 Mich at 89 & n 10. The men who approached the jury made no comment on the evidence or facts relating to defendant's guilt, and there was no indication that the armed robbery was motivated by race or that race otherwise played a role during trial. Most importantly, the questioning of Juror #14 and the jury did not reveal any information or circumstances to suggest that the jury's ability to render a fair and impartial verdict had been compromised. Although Juror #14 appeared to be emotional when she recounted the statement to the trial court, she was composed at the end of the questioning and indicated to the trial court that she could continue as a juror. She told the trial court that no other juror appeared intimidated by the statement after it was made, and no juror raised a hand in response to the trial court's question. Under these circumstances, the trial court did not abuse its discretion when it failed to declare a mistrial.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra