*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRACY LYNN MCDANIEL,

Defendant-Appellant.

UNPUBLISHED
April 24, 2025
10:46 AM

No. 365912
Huron Circuit Court
LC No. 2020-306555-FH

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant, Tracy Lynn McDaniel, appeals as of right the denial of her motion for a mistrial. Defendant was convicted of embezzlement, MCL 750.174(4)(a), false report of a felony, MCL 750.411a(1)(b), and lying to a peace officer, MCL 750.479c(2)(c), following a jury trial. Defendant was sentenced to eighteen months to 15 years imprisonment. During trial, defendant moved for a mistrial because witness testimony implied that defendant had a criminal record. We affirm.

## I. FACTS

Defendant was a manager at the Speedy Q Market gas station in Harbor Beach. On July 15, 2019, defendant had sorted the store's cash deposits from the past three days into three separate bags. Defendant was preparing to finish her shift and take the money to the bank. Defendant was taking out the recycling behind the store when she allegedly noticed the back door to the office was open and the deposit bags, containing $13,303.58, were gone. Further, defendant's purse, which had been in the office, was unzipped and tipped over, and the DVR box containing the store's security footage was missing. Defendant called 911. She was suspended from her job that day.

On July 24, 2019, the new Speedy Q manager was putting stock away when she opened a box of what she thought contained paper towels, and instead discovered the missing DVR box containing the store's security footage. She called the police and turned over the DVR box. About a week later on July 31, a store employee was taking out empty boxes to recycle when she discovered the three missing deposit bags inside an empty box of soda syrup. The police took the

bags into evidence. One bag contained $1,681.50, but the other two were empty; the deposit slips in the three bags indicated they should have contained a total of $13,303.58. Defendant was charged with the instant offenses after her fingerprint was matched to a latent print found on tape on the box containing the DVR.

Defendant's first trial ended in a mistrial because the prosecution inadvertently played a recording of defendant's statement to police, which included a prejudicial statement directly referring to a previous conviction. During defendant's second trial, Chief Todd Bucholtz of the Harbor Beach Police Department testified to his investigation of the stolen money. Following direct and cross-examination, the trial court asked questions provided by jurors. After Chief Bucholtz answered several questions with no issues, the trial court asked another question submitted by one of the jurors, which was, "Why were the other clerks not fingerprinted?" Chief Bucholtz answered, "We never fingerprinted anybody in this case." The prosecutor then interjected and asked to approach. Defense counsel also asked if they could have a moment, after which the jury was removed from the courtroom. Defense counsel asked if the YouTube livestream of trial could be paused, and the trial court indicated it was muted.

Defense counsel confirmed to the trial court that the police obtained defendant's fingerprints from a previous arrest, and the parties had avoided the subject throughout the trial thus far. Defense counsel argued that the testimony implied to the jury that the police did not need to fingerprint defendant because her fingerprints were already on file from a previous arrest. This was highly prejudicial, according to defense counsel. Defense counsel also argued that it was possible that Chief Bucholtz answered purposefully to imply that defendant had a criminal record. Defendant then moved for a mistrial. The prosecutor argued that the testimony did not necessarily imply defendant had a criminal record because the police could have had defendant's fingerprints for a variety of reasons, such as a concealed carry application or a job application. Either way, the prosecutor argued, the mistake was not so egregious as to declare a mistrial.

The trial court offered to strike the answer or give a curative jury instruction. Defendant declined both options because she did not want to draw further attention to the testimony. The trial court denied defendant's motion for a mistrial. The trial court concluded that while the answer implied that defendant had a criminal record, it was not the sole implication, as the prosecutor pointed out. The trial court did not find the error egregious and continued with the trial. The jury was brought back in the courtroom and heard from one more witness before the court adjourned for the day.

The next day, the last day of trial, defendant renewed her motion for a mistrial, but on an alternative basis. Defense counsel explained that she received an email from someone in the community who had been watching the trial live on YouTube, asking if the trial court had declared a mistrial. It was discovered that when defense counsel made her motion for a mistrial, the livestream audio was still on, but the court terminated the livestream before the court made its ruling. So, while the trial court's ruling was not broadcast, defense counsel's motion for a mistrial was broadcast on YouTube. The trial court again denied defendant's motion for a mistrial, finding the mistake was not so egregious as to warrant declaring a mistrial. Defendant now appeals.

## II. DISCUSSION

Defendant argues that the trial court abused its discretion in denying her motion for a mistrial. We disagree.

## A. STANDARD OF REVIEW

"The denial of a motion for a mistrial is reviewed for an abuse of discretion." *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). An abuse of discretion occurs when the trial court chooses an outcome that is outside the range of principled outcomes. *People v Beesley*, 337 Mich App 50, 54; 972 NW2d 294 (2021). "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Id.*, citing *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). "The moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Id.* at 54-55; *People v Caddell*, 332 Mich App 27, 37; 955 NW2d 488 (2020). And "[t]he proper analysis for a motion for a mistrial depends principally, if not exclusively, on whether a defendant has been prejudiced by an irregularity or error." *Id.* at 55.

## B. ANALYSIS

The trial court denied defendant's motion because it did not find it made defendant's criminal history obvious to the jury. The trial court believed the error could be cured with striking the answer or giving a curative instruction, but defendant declined to request either, so as not to draw more attention to the inadmissible testimony. The trial court decided that the error was not so prejudicial as to impair defendant's right to a fair trial, and denied defendant's motion for a mistrial.

The testimony offered by Chief Bucholtz was inadmissible evidence of defendant's character. "Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." MRE 404 (b)(1). Neither side attempted to introduce this evidence, but it was heard by the jury. The fact that the police did not collect fingerprints from any suspect in their investigation, yet were able to match a fingerprint found on a box containing the store's DVR to defendant, implies that the police already had defendant's fingerprints on file from a previous arrest or conviction. There are other explanations of why defendant's fingerprints could have been on file. As the prosecutor suggested, defendant's fingerprints may have been collected for a concealed carry gun license or for employment reasons. However, the testimony also implies that defendant could have had a previous conviction, which was ultimately the correct conclusion.

Nevertheless, the error did not rise to the level that a mistrial was required. See *Caddell*, 332 Mich App at 37. The testimony revealed that the police did not need to take defendant's fingerprints because they somehow already had access to them. This error was not so egregious as to deprive defendant of a fair trial. See *Beesley*, 337 Mich App at 54. We agree with the trial court that striking the answer from the record or giving a curative instruction would have remedied the error. See *id.* at 60. As stated by this Court in *Beesley*, a mistrial should only be granted if the

error was "prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *Id*. at 54. In that case, the trial court declined to declare a mistrial after the defendant's criminal history was alluded to, not once, but twice: once during a line of questioning from defense counsel, and once following a question by the prosecutor to a detective. *Id*. at 53-54. The trial court denied the defendant's motion for a mistrial after the detective's testimony revealed the defendant had a criminal record. *Id*. at 54. This Court concluded that the defendant was not prejudiced by the officer's testimony because (1) the trial court offered to strike the testimony, but defense counsel elected to instead cross-examine the detective regarding the defendant's criminal history, and (2) the trial court instructed the jury to disregard all comments about the defendant's criminal history. *Id*. at 59. This Court concluded the remedies were sufficient to cure the prejudicial effect of the improper testimony, and given that defense counsel was able to choose a remedy, the error was not so egregious that a mistrial was warranted. *Id*. at 59-60. Further, this Court found that the testimony did not provide any specifics about the defendant's criminal history. *Id*. at 60.

Here, the trial court offered to strike the testimony of Chief Bucholtz and give a curative instruction, but defendant decided against doing either, because she did not want to draw the jury's attention to the improper testimony. This was a reasonable strategy given that the testimony did not directly allude to defendant's criminal history. As in *Beesley*, the testimony did not provide any specifics regarding defendant's criminal history, and defendant was given the choice of remedy. *Id*. at 59-60. "Given the various steps taken to mitigate any prejudice, including that defense counsel was permitted to choose a method of mitigation over one suggested by the trial court, it certainly was not the case that the error complained of is so egregious that the prejudicial effect can be removed in no other way than the granting of a mistrial." *Id*. at 60 (quotation marks and citation omitted).

Further, because the answer did not directly state that defendant had a criminal record, and because the prosecution did not attempt to introduce this evidence, we do not find the error was "so egregious that the prejudicial effect can be removed in no other way." See *id*. at 54. The improper evidence was introduced through a question posed by the jury that the trial court read aloud to the witness. Afterwards, the prosecution and the defense both expressed to the trial court that they were avoiding the topic of defendant's fingerprints throughout trial, and that neither would have asked that question on their own due to its inadmissible and prejudicial subject matter. The trial court effectively invited the error by submitting the juror question to the witness. However, the error did not prejudice defendant such that she was denied a fair trial. As discussed above, a remedy such as a curative instruction would have fixed the error, but defense counsel understandably declined to call more attention to the error.

Defendant also argues that Chief Bucholtz would have been "well-aware" of the consequences of again suggesting prior arrests because of his involvement with both trials, and thus should not have testified as he did. This Court in *Beesley* agreed that all witnesses have an obligation not to venture into forbidden areas of testimony. *Id*. at 57. However, when a police witness offers testimony that is not directly responsive to a question that is asked by the trial court itself, as occurred here, it is more difficult to determine how the court and counsel should proceed. Arguably, defense counsel or the prosecution should have objected before Chief Bucholtz could answer. Chief Bucholtz was well-aware of the consequences of disclosing defendant's criminal history, as he was aware that defendant's first trial ended in a mistrial for that reason. However,

it cannot be said that he intentionally answered in order to prejudice defendant. While the Chief's response that, "We never fingerprinted anybody in this case," implied that defendant had a prior arrest record, he did not disclose that the police had defendant's fingerprints specifically because she had a prior record. The response was vague enough to leave open other possibilities. Furthermore, an unresponsive answer to a permissible question standing alone is rarely, if ever, sufficient grounds to declare a mistrial. *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995). Thus, we find this argument unpersuasive.

Lastly, defendant argues that she was further prejudiced when it was discovered that the trial livestream was ongoing when defense counsel moved for a mistrial. Defendant asserts that "the general public, and likely the jury" were made aware of the motion for a mistrial brought immediately after the Chief's statement. There is no evidence that members of the jury were made aware of defendant's motion for a mistrial. Defense counsel received a Facebook message from someone in the community, who was watching the trial livestream, and asked if the court had granted the mistrial request. The record does not show that any members of the jury were aware of the motion for a mistrial.

## III.  CONCLUSION

The trial court did not abuse its discretion in denying defendant's motion for a mistrial. While striking the testimony or giving a curative instruction would have remedied any prejudicial effect, even without striking the testimony or giving a curative instruction, we do not find that the "error complained of is so egregious that the prejudicial effect can be removed in no other way" than declaring a mistrial. See *Beesley*, 337 Mich App at 54-55.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani