*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT FITZGERALD COKER,

Defendant-Appellant.

UNPUBLISHED
February 04, 2026
11:39 AM

No. 373544
Oakland Circuit Court
LC No. 2023-285721-FH

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

PER CURIAM.

On June 23, 2022, defendant, Robert Fitzgerald Coker was driving a semi-truck westbound on I-696 approaching a construction zone. Coker failed to brake or slow as traffic came to a near-complete stop ahead of him and collided with the rear end of a 2014 Buick LaCrosse, killing the driver and passenger inside and injuring several others in a six-vehicle pileup. Coker was convicted by a jury of two counts of reckless driving causing death, MCL 257.626(4), and sentenced as a third offense habitual offender, MCL 769.11, to 7 to 30 years imprisonment for each count, to run concurrently, with credit for 61 days served. Coker appeals as of right, arguing the evidence was insufficient to convict him, and that his trial counsel was ineffective. For the reasons set forth in this opinion, we affirm Coker's convictions.

## I. FACTUAL BACKGROUND

Coker's trial took place on September 23 and 24, 2024. The jury learned that on the day of the accident, it was 70 degrees and sunny, and Coker was not under the influence of any alcohol or drugs while driving. Coker was driving westbound on I-696 for several miles and was about to take the I-96 exit west toward Lansing. The highway is four lanes wide, and he drove in the lane second from the left. There were traffic signs indicating construction work ahead for the five miles before the accident location.

Jalen Cook, a semi-truck driver in the same lane behind Coker, observed Coker "driving erratically" on I-696 westbound for "[t]wo to three miles" before the accident: "I saw him switching lanes improperly without turn signals . . . ." Cook slowed down and paid attention to Coker's driving. Cook's semi-truck was equipped with a camera that recorded a video of the

accident. The video was played for the jury, and we reviewed it on appeal. It shows that in the 30 seconds before the accident, there were traffic signs, construction zone cones, and two sets of rumble strips informing drivers of a construction zone ahead. As Coker approached the exit to I-96 toward Lansing, the vehicles ahead of him and around him slowed down, but he continued forward at the same speed.[1]

Timothy Buck, another semi-truck driver, also observed the accident. Buck was driving on I-696 westbound and passed signs indicating oncoming construction. He was in the lane second from the right and observed Coker's semi-truck in his left rearview mirror. Buck described: "I saw that the truck was not slowing down, and the traffic was stopped pretty close in front of him. So I made a quick right to get out of the way because inevitably it was going to be an accident." He did not hear Coker's semi-truck blow its horn before the accident occurred.

Rani Brikho also observed the accident. Brikho was driving a white van in the far left lane exiting onto I-96 toward Lansing and observed traffic slowing down in front of him because there was a construction zone ahead. Brikho saw the Buick LaCrosse slow down as it passed him in the right lane. Then, he saw the semi-truck crash into the rear of the Buick LaCrosse. Brikho observed the driver of the Buick LaCrosse: "he was moving and then he just stopped."

Trooper Dominic Gentry was the first responding officer at the scene of the accident and was the officer in charge of the case. He approached the accident scene driving westbound in the same direction that the semi-truck and Buick approached the exit to I-96 west toward Lansing. On his way into the crash location, he passed road signs and rumble strips indicating oncoming construction. When he approached the Buick LaCrosse, the driver and passenger were already deceased. Trooper Gentry also observed Coker, who "appeared distraught." When Trooper Gentry asked Coker what happened, Coker "said he was just driving along and the next thing he knew he looked up and traffic was stopped." Coker said he was not attempting to change lanes when the accident happened.

The jury heard testimony from Chad Lindstrom, an expert in accident reconstruction with the Michigan State Police who was called to the scene of the accident. Lindstrom was shown photographs of the accident and testified that the tire marks on the highway at the scene, were "not necessarily due to braking." Lindstrom also reviewed the crash data retrieval (CDR) report from the Buick LaCrosse's black box, which recorded speed and other data around the time of the accident. The report revealed that five seconds before the accident, the accelerator pedal of the Buick LaCrosse was not depressed at all, and 0.5 seconds before the time of impact, the accelerator pedal depressed from 0% to 60%, then to 99%, indicating the driver of the Buick LaCrosse floored the accelerator because he was reacting to something. The report also revealed that before the time of impact, the Buick LaCrosse was traveling at one mile per hour, and then at seven miles per hour

---

[1] Although there is only one minute of video footage of the back of Coker's semi-truck, the semi-truck does not appear to be weaving or merging without using a turn signal in the 30 or so seconds leading up to when the accident occurred. It is possible the weaving and failing to signal occurred before the start of the video.

at the time of impact, and then at fifty-eight miles per hour after the impact and before it collided with the Black Chevy Traverse to its right shoulder.[2]

Lindstrom also reviewed the report obtained from analyzing Coker's semi-truck engine, which revealed that in the fifteen seconds before the accident, Coker was driving at a speed of between 65 to 67 miles per hour, and that the last recorded speed before the time of impact was 66.5 miles per hour.[3] When the semi-truck collided with the Buick, it decreased in speed by only seven miles per hour. The report also revealed that the brakes on the semi-truck were never engaged before the time of impact, and the semi-truck was not in cruise-control. Lindstrom opined that there were no physical indications from the scene of the accident that the brakes on the semi-truck were engaged before or at the area of impact, and that tire marks on the highway would have been from engaging the breaks after the time of impact to the "final rest of the vehicles."

From these reports, Lindstrom opined that Coker's vehicle was responsible for the accident because the reports evidenced Coker did not break at all before the time of impact, and the Buick LaCrosse was moving very slowly or was completely stopped in the five seconds before the time of impact. Lindstrom opined the crash occurred because Coker "was doing something other than paying attention and looking straight ahead on the road."

A police officer collected Coker's cell phone from the scene of the accident and handed it off to the computer crimes unit at the Michigan State Police for forensic analysis. Before and during the accident, Coker was speaking on the phone with Titus Williams,[4] the owner of the delivery company that Coker was making deliveries for that day.[5] Coker had a Bluetooth "hands free phone" in his semi-truck. The two were discussing an issue with a tire on the semi-trailer, and Coker informed Williams he would need to cancel his next delivery to fix the tire. Williams described hearing the loud "thumping sound" of the collision and the conversation ended.

---

[2] Additionally, the prosecutor cites the autopsy report for the driver of the Buick LaCrosse, which was provided to the jury but not this Court and confirmed that the driver did not have alcohol in his system at the time of the accident. As this trial evidence indicates, and contrary to Coker's argument on appeal, a contributory negligence instruction was not supported by the evidence. A jury instruction is not warranted where it is not supported by the evidence, *People v Mills*, 450 Mich 61, 81, 82 n 15; 537 NW2d 909 (1995), and defense counsel cannot be ineffective for failing to advance a meritless argument, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). We do not analyze this issue any further.

[3] The speed limit in the area was normally 70 miles per hour, but there was a revised construction zone speed limit of 60 miles per hour where the accident occurred. Coker driving 6.5 miles over the speed limit before the accident does not impact our analysis.

[4] Coker placed a call to Total Quality Logistics at 10:03:07 a.m. and that phone call lasted 2 minutes and 42 seconds. He placed another call to Williams at 10:06:06 a.m. that lasted 6 minutes and 44 seconds.

[5] Coker was an independent contractor and owned the semi-truck involved in the accident.

The jury was also presented with forensic cell phone analysis of Coker's iPhone, which revealed that although he may have been using a Bluetooth "hands free device" to speak with Williams, Coker was still physically holding his cell phone to photograph a bill of lading and trucking information at 10:09 a.m. while behind the wheel. And at 10:11 a.m., he used his cell phone to photograph a document with more trucking information. The exact time of the collision was 10:12:04 a.m. These photographs were taken while talking to Williams. The trial court judge described, while ruling on defense counsel's motion for a directed verdict, that the documents photographed while Coker was driving "appeared to be placed on the defendant's steering wheel . . . ." During closing arguments, the prosecution displayed the second photograph Coker took on his iPhone and also described:

> This is the second one and you can see right here if you zoom in on that, that's a steering wheel. Take a look at his truck. Nice red steering wheel. Just—so he was half holding that piece of paper up on his steering wheel with one hand on the left side holding the paper and the other one he's taking the photograph while also on the phone in a construction zone [] and what may have apparently been, according to Titus Williams, a possibly damaged truck.

The jury convicted Coker of both counts of reckless driving causing death. Coker appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Coker argues that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he was operating a motor vehicle with willful and wanton disregard for the safety of persons or property. We disagree.

## A. STANDARD OF REVIEW

At the close of the prosecution's case, defense counsel moved for a directed verdict, arguing the prosecution had not presented evidence of each element of the crime sufficient for the jury to make a determination of guilt. However, a defendant need not preserve the issue of sufficiency of the evidence to challenge the same on appeal. *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). A defendant's sufficiency-of-the-evidence claim is reviewed de novo. *People v Osby*, 291 Mich App 412, 415, 804 NW2d 903 (2011), and is evaluated by asking whether "a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003). "Circumstantial evidence and any reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of a crime." *People v Johnson,* 340 Mich App 531, 548; 986 NW2d 672 (2022) (quotation marks and citation omitted).

## B. WILLFUL OR WANTON DISREGARD

MCL 257.626(4) states that a person who drives recklessly and causes death is guilty of a felony:

(2) Except as otherwise provided in this section, a person who operates a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty of a misdemeanor . . . .

* * *

(4) Beginning October 31, 2010, a person who operates a vehicle in violation of subsection (2) and by the operation of that vehicle causes the death of another person is guilty of a felony punishable by imprisonment for not more than 15 years or a fine of not less than $2,500.00 or more than $10,000.00, or both . . . .

To prove Coker was guilty of reckless driving causing death under MCL 257.626(4), the prosecution needed to prove beyond a reasonable doubt that (1) Coker drove a motor vehicle on a highway or other place open to the public or generally accessible to motor vehicles; (2) Coker drove a motor vehicle in a willful or wanton disregard for the safety of persons or property; and (3) that the operation of the vehicle was the factual and proximate cause of the deaths[6] of the victims. *People v Jones*, 497 Mich 155, 167; 860 NW2d 112 (2014) (cleaned up). Coker only challenges the second element, that the evidence was insufficient to prove he willfully or wantonly disregarded the safety of others.

The trial court defined willful or wanton disregard for the jury as "more than simple carelessness[] but does not require proof of an intent to cause harm. It means knowingly disregarding the possible risks to the safety of people or property." This instruction comports with the caselaw: "To show that a defendant acted in wilful and wanton disregard of safety, something more than ordinary negligence must be proved." *People v Crawford*, 187 Mich App 344, 350; 467 NW2d 818 (1991). When willful and wanton behavior is an element of a criminal offense, it is not enough to show carelessness. Rather, "a defendant must have a culpable state of mind," *id.*, or a *mens rea* component that makes this felony charge distinct from a charge of ordinary negligence. *People v Fredell*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164098), slip op at 8-9. "The *mens rea* requirement for reckless driving is not recklessness; instead, the statute provides that it is 'willful or wanton disregard for the safety of persons or property[,]' [s]ee MCL 257.626(2)," which is the same as the *mens rea* requirement for involuntary manslaughter, criminal gross negligence. *Id.*, slip op at 11.[7]

---

[6] The parties stipulated to the admission of the victims' autopsy reports that confirmed the car accident, specifically blunt force trauma, was the cause of death.

[7] "In criminal law, 'gross negligence' is not merely an elevated or enhanced form of ordinary negligence. As we held in [*People v*] *Barnes*, [182 Mich 179, 198; 148 NW 400 (1914)], in criminal jurisprudence, gross negligence 'means wantonness and disregard of the consequences which may ensue, and indifference to the rights of others that is equivalent to criminal intent.' " *People v Schaefer*, 473 Mich 418, 438-439; 703 NW2d 774 (2005).

## C. ANALYSIS

There was sufficient evidence that Coker drove in a manner that willfully or wantonly disregarded a high risk of serious injury to people in other vehicles.

An example of sufficient evidence of the requisite negligence is found in *People v Carll*, 322 Mich App 690, 693; 915 NW2d 387 (2018), where the defendant was convicted by a jury of reckless driving causing death, MCL 257.626(4). The defendant was driving a pickup truck with six other people in the vehicle. After the defendant drove through a stop sign, he hit another car, killing the driver of that car. *Id*. at 693-694. On appeal, the defendant asserted that the prosecution did not prove beyond a reasonable doubt that he operated the motor vehicle with willful and wanton disregard for the safety of persons or property as contemplated by MCL 257.626. *Id*. at 694. The *Carll* Court concluded that sufficient evidence supported the defendant's convictions where testimony and forensic evidence at trial established that the defendant "was driving too fast for the conditions." *Id*. at 696-697. Specifically, one of the passengers urged the defendant to slow down on the gravel road on which the defendant was travelling and stated that the defendant was travelling 30 or 40 miles an hour as he approached a stop sign. *Id*. at 697. One of the witnesses at trial also testified that the defendant was driving "kind of reckless[,]" and that he did not slow down as he approached a stop sign. One of the other passengers characterized the defendant's driving as "weird" and "kind of terrifying[,]" and testified that the defendant was travelling 50 miles per hour before the crash. *Id*. A Michigan State Police officer testified that evidence gleaned from the accident reconstruction showed that the defendant was attempting to "gun through" the stop sign, and that the defendant apparently accelerated as he approached the stop sign. *Id*. at 697-698. After reviewing the record evidence, this Court observed:

> In sum, there was evidence that defendant purposefully drove through a stop sign at high speed without any attempt to brake and that he may even have accelerated into the intersection. A jury could fairly conclude that defendant's actions were willful or that they were done with wanton disregard of the potential consequences, i.e. death and serious injury. [*Id*. at 698.]

In this case, Coker was driving while willfully distracted by his cell phone. Coker's brief on appeal argues the call to Williams right before the collision, made using a Bluetooth device, demonstrates Coker "was not knowingly disregarding the possible risks to the safety of those around him. It shows that Mr. Coker was concerned with the risks. Mr. Coker cancelled his future trip to assess the risks, and was travelling near the posted speed limit at the time of the accident." But that was not the exclusive manner in which Coker used his phone.

The jury also heard evidence that Coker was distracted and not looking up at the road. Coker used his iPhone to photograph documents placed on the steering wheel of his vehicle one minute before the accident. Trooper Gentry testified Coker told him "he was just driving along and the next thing he knew he looked up and traffic was stopped," meaning Coker was not looking at the road. Coker's actions were more than looking away from the road for a split second. Coker drove at 66.5 miles per hour into a vehicle that was, for at least five seconds before the time of impact, almost completely stopped according to the CDR report. If Coker did not brake at all or sound his horn, a reasonable juror could infer that this is not a situation where he looked up at the last second and tried to avoid hitting the Buick LaCrosse. Rather, a reasonable juror could infer

from the analysis of the engine of his semi-truck, and from the CDR report for the Buick LaCrosse, that Coker was not looking up at the road at all in the five seconds before the accident.

The riffling through documents, using his left hand to hold the documents on his steering wheel, holding his iPhone with his right hand to photograph the documents for a span of two to three minutes, all while holding a six minute long conversation with a colleague rather than looking up at the road demonstrated a culpable state of mind, that Coker knowingly disregarded the safety of those around him. Viewing the evidence in a light most favorable to the prosecution, a juror could find, beyond reasonable doubt, that these actions willfully and wantonly disregarded the safety of others around him. The evidence was sufficient for the jury to convict Coker of reckless driving causing death. *Carll*, 322 Mich App at 698; *Fredell*, ___ Mich App at ___; slip op at 11.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Adrienne N. Young

-7-