*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MICHAEL THOMAS,

      Defendant-Appellant.

UNPUBLISHED
August 20, 2019

No. 340545
Wayne Circuit Court
LC No. 17-002666-01-FC

Before: K. F. KELLY, P.J., and TUKEL and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of assault with intent to do great bodily harm less than murder (AWIGBH) (MCL 750.84), and malicious destruction of personal property (MDOP) $200 or more, but less than $1,000 (MCL 750.377a(1)(c)(*i*)). The trial court originally sentenced defendant on August 1, 2017, to concurrent terms of 25 to 40 years' imprisonment for AWIGBH and six months to one year for MDOP without referencing that the trial court sentenced defendant as a fourth-offense habitual offender (MCL 769.12). The trial court amended defendant's judgment of sentence on August 24, 2017, to correct the ministerial error. Defendant timely appealed. We affirm.

Defendant moved in this Court for remand for an evidentiary hearing regarding his claims of ineffective assistance of counsel and because he believed that the trial court may have erred by incorrectly applying MCL 769.34(2)(b), the codified "two-thirds rule" articulated in *People v Tanner*, 387 Mich 683; 199 NW2d 202 (1972). This Court denied defendant's motion for an evidentiary hearing but granted his request for remand of this case so that he could move in the trial court for consideration whether he should be resentenced. *People v Thomas*, unpublished order of the Court of Appeals entered June 18, 2018 (Docket No. 340545). On

remand, defendant moved for resentencing and the trial court agreed to resentence defendant to 25 to 35 years' imprisonment for his AWIGBH conviction; his MDOP sentence was unchanged.[1]

## I. BACKGROUND

This case arises from two incidents that occurred on March 13, 2017, in the area of Rosemont Avenue and Chalfonte Street in Detroit, Michigan. In the early afternoon, Lisa Candie drove on Rosemont Avenue and found cars parked on her left and defendant's SUV parked at an angle in the street on her right requiring her to proceed slowly. As she drove by the SUV, defendant jumped out of the rear driver's side door and ran to Candie's door with a four-way tire iron in his hand yelling something. Defendant hit her windshield multiple times with the tire iron damaging her windshield and putting a hole in it. Defendant tried to open Candie's door causing her to scream. Despite the snowy, slippery road conditions, Candie escaped and drove to her parents' house on Rosemont Avenue. When she drove away, defendant's open truck door damaged the passenger side of her car.

That same afternoon, Michael Wynn drove down Rosemont Avenue with his 78-year-old mother and approached a stop sign when the back door of defendant's parked SUV opened and knocked off his passenger side mirror. Wynn stopped, exited his vehicle, left it running with the door open, and approached the SUV. Defendant left the back seat of the SUV with a tire iron, bypassed Wynn who remarked that he broke his mirror. Defendant walked over to Wynn's vehicle with Wynn following asking him if he heard him say that he knocked the mirror off of his vehicle. Defendant got into the driver's seat of Wynn's car. Wynn jumped on top of defendant and they started to struggle for control of the vehicle. Wynn tried to get defendant out of his vehicle. Defendant put the vehicle in drive and drove it into garbage cans and up onto the curb while Wynn scuffled with him. Defendant then cut Wynn on his chin, twice on his left hand, and on the back of his right shoulder with a box cutter. Wynn gained control of the vehicle and put it into park. Wynn's mother punched defendant in the face and Wynn struggled to get defendant out of his car. Wynn bit defendant's hand causing him to drop the box cutter on the seat. Wynn retrieved it and used it on defendant as he went out the passenger side door. Once out, defendant walked away. Meanwhile, Wynn bled profusely, his mother screamed for help and for someone to call the police, 911, and an ambulance. An ambulance arrived and took Wynn to Sinai Grace Hospital.

Defendant described the two incidents differently. He testified that his SUV broke down and when he sought assistance from Candie he slipped and accidently hit her windshield with his tire iron. After she left, he returned to his truck and he fell asleep until he awoke after hearing a bump from Wynn's car hitting his mirror. Wynn approached him yelling, and he and Wynn tussled at the rear of Wynn's vehicle and ended up by Wynn's driver's door whereupon they

---

[1] Because we previously considered defendant's sentencing claim of error and provided defendant the relief he requested and the trial court addressed defendant's claim of error and resentenced him, this issue has been rendered moot. *People v Mansour*, 206 Mich App 81, 82; 520 NW2d 646 (1994). "It is well established that a court will not decide moot issues." *People v Richmond*, 486 Mich 29, 34; 782 NW2d 187 (2010). Therefore, we need not address that issue.

both fell and somehow defendant ended up inside Wynn's car door well. Both men ended up in the driver's seat where Wynn held defendant down. Defendant testified that Wynn cut him with a box cutter on his arms and legs. Defendant somehow took the box cutter. Defendant denied using the box cutter to cut Wynn. He surmised that Wynn cut himself while trying to cut defendant. Defendant exited the car and walked to a nearby gas station where Wynn and a group of people accosted him and inflicted injuries upon him when he exited the gas station. The police arrived and took defendant into custody and took him to the hospital where he received treatment and medication before being released. In his discussions with hospital staff, defendant denied he had taken any drugs but at trial admitted that he used cocaine and had a few drinks.

The day after the incidents, police officers interviewed defendant and video recorded the interview. Defendant testified that the cocaine and alcohol combined with the medication he received at the hospital made him disoriented when he talked with the police. He stated that he had a hangover.

On the first day of trial, the prosecution indicated that if defendant testified at trial it intended to present the video recorded interview for impeachment purposes. Defense counsel argued that the video could not be used in any manner because defendant's waiver had not been voluntary or knowing because he suffered from advanced intoxication. The parties agreed that the trial court could address the issue of the video's admissibility if it arose during the trial. The prosecution also advised the trial court that it objected to the admission of an uncertified copy of defendant's medical records in the event that defendant did not testify at trial because the prosecution would not have opportunity to cross-examine defendant about his statements made to medical staff. Defense counsel agreed that for admissibility defendant would be required to testify.

On the second day of trial, defense counsel raised an issue regarding defendant's ability to waive his *Miranda*[2] rights because of his intoxication. Defense counsel argued that the trial court needed to suppress the recorded video of the police interview because defendant lacked the ability to knowingly and voluntarily waive his rights, and the video featured portions that indicated the police suggested and interpreted defendant's responses. The prosecution argued that defendant was held in detention for 24 hours and had time to become sober before the interview, and when asked if he wanted to proceed or wait a day, he consented to the interview. The prosecution also argued that the trial court should permit it to use the video for impeachment purposes even if it precluded the prosecution from using it in its case-in-chief because settled caselaw permitted the use of a *Miranda* defective confession for impeachment purposes. Defense counsel agreed that the prosecution could use a *Miranda* defective confession for impeachment purposes. Nevertheless, defense counsel argued that defendant's mental capacity had been so compromised by intoxication that he spoke incoherently and the trial court should not allow the jury to hear his statements under such circumstances. The trial court reflected upon the contents of the police interview and ruled it *Miranda* defective and that the prosecution could

---

[2] *Miranda v Arizona*, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694 (1966).

not present it in its case-in-chief. The trial court, however, ruled that it could be used for impeachment purposes.

After defendant testified and the defense closed its case, the prosecution called Detroit Police Sergeant Robert Wellman as a rebuttal witness. The prosecution examined the witness regarding his interviewing defendant and played approximately nine minutes of the recorded interview until the trial court sua sponte stopped the playing of the recorded interview, and sent the jury out of the courtroom. The trial court told the prosecution that it ruled that the recorded interview could only be used to impeach defendant. The trial court, therefore, ordered that the prosecution could not present the evidence to the jury through a rebuttal witness and that the evidence would be stricken. The trial court had the jury return to the courtroom and instructed them that the video evidence was stricken from the record and that they were to disregard the witness's testimony and the video. After the parties made their closing arguments, the trial court instructed the jury. The trial court told the jury that they could not consider any evidence or testimony that it had stricken or excluded. The jury deliberated and found defendant guilty of AWIGBH and MDOP. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE

Defendant argues that his trial counsel provided him ineffective assistance by not moving for a mistrial related to the police interview video and the trial court's evidentiary ruling, and by failing to obtain and use his medical records. We disagree.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact, if any, for clear error, and review de novo its conclusions of law. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. We also review de novo constitutional issues. *Harvey v Michigan*, 469 Mich 1, 6; 664 NW2d 767 (2003). Although defendant preserved the issue by filing a motion for remand in this Court, because this Court denied the motion,[3] and no evidentiary hearing has been held, our review is limited to mistakes apparent on the trial court record. See *People v Seals*, 285 Mich App 1, 17, 19-20; 776 NW2d 314 (2009).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Defense counsel's performance must be measured against an objective standard of reasonableness and without benefit of hindsight. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). This Court does not substitute its judgment for that of counsel in a matter of trial strategy. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999).

---

[3] *People v Thomas*, unpublished order of the Court of Appeals entered June 18, 2018 (Docket No. 340545).

To prove ineffective assistance of counsel, a defendant must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). Further, defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

Defendant first argues that defense counsel provided ineffective assistance by failing to move for a mistrial after the prosecution played the portion of the police interview video that the trial court ruled could not be used in the prosecution's case-in-chief but only for impeachment purposes. Defendant contends that the trial court's instructions to the jury to disregard the video evidence and its ruling to strike the evidence from the record could not cure the prejudice, and therefore, defense counsel should have moved for a mistrial. We disagree.

Trial courts have discretion to grant or deny a motion for a mistrial. *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003). "A mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (quotation marks and citation omitted). "A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way." *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

Although defendant asserts that defense counsel should have moved for a mistrial, he fails to explain how not doing so prejudiced him and impaired his ability to get a fair trial. The record reflects that the trial court stopped the prosecution's examination of Sergeant Wellman, struck his testimony from the record and the video evidence presented during his testimony. The trial court then instructed the jury of its decision and ordered them to not consider that evidence for their determination whether defendant committed the charged offenses. The trial court issued a further curative instruction at defense counsel's request and during the trial court's final instructions to the jury told them that they could only consider properly admitted evidence and could not consider excluded or stricken evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant has not presented anything that establishes that the trial court's instructions failed to cure the situation presented in this case and prevented him from receiving a fair trial. Therefore, we are not persuaded that the circumstances presented in this case had a prejudicial effect so severe that it was not cured by the instructions the trial court appropriately issued. Because the trial court's instructions removed any prejudice to defendant resulting from the playing of the video, a motion for a mistrial would have been futile. Defense counsel was not ineffective for failing to make such a futile motion. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Accordingly, defendant has failed to establish that defense counsel's performance fell below an objective standard of reasonableness and that his counsel provided him ineffective assistance in this regard.

Defendant next argues that defense counsel was ineffective for failing to obtain and use his medical records. We disagree.

"[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]" *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Defendant's medical records from Sinai Grace Hospital were not admitted as evidence during his trial. Nevertheless, he testified regarding the injuries he claimed he suffered at the hands of Wynn and the group that accosted him as he left the gas station. Defense counsel used defendant's medical records to refresh defendant's recollection. Defendant has not described the content of the medical records or explained how they would have been beneficial to his case or assisted in his defense. We find no factual support for his claim that defense counsel provided ineffective assistance in this regard.

Moreover, "[t]he decision of what evidence to present is also presumed to be a matter of trial strategy." *People v Solloway*, 316 Mich App 174, 191; 891 NW2d 255 (2016). In this case, the record reflects that defense counsel used defendant's medical records in an appropriate manner in furtherance of his defense strategy. Defendant's medical records contained statements made by defendant that contradicted his trial testimony justifying defense counsel's decision not to seek their admission. The prosecution challenged the veracity of defendant's testimony and questioned him regarding his statements reported in those records to establish during cross-examination that defendant lied to medical personnel about his drug and alcohol use. The record does not establish that defense counsel failed to provide effective assistance by deciding not to move for the admission of defendant's medical records. Defense counsel made a decision based on a reasonable trial strategy. Therefore, defense counsel's conduct did not fall below an objective standard of reasonableness and defendant has failed to establish that defense counsel provided him ineffective assistance.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Jonathan Tukel
/s/ James Robert Redford