*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

STEVEN RUSSELL BRCIC,

        Defendant-Appellant.

FOR PUBLICATION
March 09, 2026
9:46 AM

Nos. 362727; 366230
Cheboygan Circuit Court
LC Nos. 22-006325-FH; 20-
       006006-FH

Before: ACKERMAN, P.J., and YOUNG and KOROBKIN, JJ.

YOUNG, J.

In these consolidated cases, defendant, Steven Russell Brcic, appeals as of right his convictions and sentences for prisoner in possession of a weapon (PPW), MCL 801.262(2), and for operating while intoxicated third offense (OWI-3rd), MCL 257.625(1)(a) and (9)(c). In both cases, we affirm Brcic's convictions. However, because Brcic's within-guidelines sentence for PPW is disproportionate and his OWI-3rd sentence, a sentence nearly four times the maximum minimum in the guidelines without adequate explanation, is also disproportionate, we vacate his sentences and remand for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 14, 2020, Officer Noah Morse was responding to a larceny complaint unrelated to this case at a Walmart in Cheboygan County. A Walmart employee asked Morse to check on Brcic, who "couldn't stand up straight and was kind of acting funny" near the bottle return area. Morse observed Brcic exiting the store and followed him out to "make sure everything was okay." Morse found Brcic sitting in the driver's seat of a Chevrolet Tahoe parked on the side of the Walmart with his feet hanging outside the door. When Morse approached, he noticed a beer can in the center console of the Tahoe. Brcic told Morse that he had been drinking earlier in the day, and at Morse's request, Brcic poured the contents of the can out onto the ground. Morse asked Brcic what he was doing in the parking lot, and Brcic replied that he was waiting for his brother to come give him a ride home. Morse advised Brcic that he was not permitted to drive, but he could remain in place while waiting for his ride. Brcic agreed, and Morse went back inside Walmart to investigate the larceny complaint he was originally called to handle.

After walking back into Walmart and checking the surveillance cameras for the parking lot, Morse noticed that Brcic and the Tahoe were gone. Morse reviewed the surveillance camera footage and confirmed that the Tahoe had driven around to the back of the store before exiting the property. He left Walmart in his patrol car looking for Brcic and radioed his colleagues to "be on the lookout" for the Tahoe.

Shortly thereafter, Steven Coffey, a witness at trial and a local resident, called 911. Coffey lived near Columbus Beach and the "green docks," a common area for locals to swim and hang out, and he had heard a vehicle crash outside. Officer Walt Chamberlain of the Tuscarora Township Police Department was dispatched to the scene of the accident and observed a Chevrolet Tahoe flipped on its side with broken windows lying next to a tree that it appeared to have struck. No one was inside the Tahoe. Coffey told police that he saw someone emerge from nearby bushes, cross the street, and head toward the river. As law enforcement was investigating the scene, three minors approached with information. The minors shared with police, and later testified, that before the accident, while at the green docks, they noticed a man sitting on a bench. Next, they saw that same man driving past them in a Tahoe "fast" and "reckless." The Tahoe swerved toward the minors and the driver screamed "assholes" out his car window while driving away. Immediately thereafter, the minors heard a loud crash, and saw the Tahoe flipped on its side next to a significantly damaged tree. At the scene and again at trial, the minors identified Brcic as the driver of the Tahoe. An EMT on the scene told Chamberlain that he saw a man matching Brcic's description limping across the street toward the river.

Chamberlain went toward the river in pursuit of Brcic. Chamberlain identified himself and yelled at Brcic to "stop," but Brcic ignored the command and kept limping toward the river. Chamberlain got within about ten feet of Brcic when Brcic walked straight into the water, looked back at Chamberlain, and did a backstroke toward the middle of the river. Chamberlain and other first responders began to reposition themselves on the other side of the river, where they thought Brcic was headed. A bystander informed the officers that Brcic was hanging onto the side of her pontoon boat, which was moored in the river. Chamberlain stood on board the pontoon, identified himself as "Tuscarora Police," and asked Brcic to let go of the pontoon and come to shore. Brcic did not comply. Multiple officers repeatedly commanded Brcic to get out of the water. Brcic let go of the pontoon and continued swimming backstroke down the river while law enforcement followed on foot, regularly shouting requests that he get out of the water and telling him that he would get additional charges for ignoring these commands.

After more than 15 minutes of swimming backstroke down the river, Brcic climbed aboard a police boat. He was handcuffed, taken to shore, and assessed for injuries. While ashore, Chamberlain asked Brcic additional questions about whether anyone else was in the Tahoe when he crashed. Brcic originally told them he was alone, but moments later said that someone he just met at the bar had been driving. Brcic was transported to a hospital for medical attention. At the hospital, Brcic was reluctant to let doctors perform any tests or assessments. He eventually complied and a blood draw was done that showed his blood alcohol content of 0.2266. After being treated and discharged from the hospital, Brcic was placed under arrest.

Brcic was charged with OWI-3rd, as well as five counts of assaulting, resisting, or obstructing a police officer, MCL 750.81d; operating with a suspended or revoked license second or subsequent offense, MCL 257.904(1) and (3)(b); failure to report an accident, MCL 257.622;

and possession of an open container of alcohol in a vehicle, MCL 257.624a, as a fourth-offense habitual offender, MCL 769.12.[1] Brcic did not post bond and while in jail, an additional blood draw was done pursuant to a warrant. See *People v Brcic*, 342 Mich App 271, 273; 994 NW2d 812 (2022).

Brcic filed a motion to suppress the blood-draw evidence that was obtained while in jail, alleging the warrant was faulty. The trial court granted that motion and entered an additional order to stay the trial as the prosecution appealed. During the pendency of the interlocutory appeal, Brcic remained incarcerated in Cheboygan County Jail. Brcic was assigned to cell six, and he did not have cellmates. While there, Brcic received a single-use, disposable shaving razor from Corporal Christopher Parsons, in accordance with jail policy.

The jail's policy on shaving razors was contained within the Inmate Rule Guide and specified the rules against inmates causing damage to the shaving razors. Lieutenant Brenda Beckwith, the chief jail administrator, testified, "[p]er the policy, either it's to be intact when it's returned[,] or they can be charged." Under "ADMINISTRATIVE RULES," the Inmate Rule Guide states, "[r]azors are to be returned undamaged . . . . Missing or damaged blades shall be investigated and appropriate action on inmate/cell shall be taken." The razors were distributed on Mondays and Thursdays only, around 7:30 a.m., to inmates who were in the general population, and collected by 10:00 a.m. Before distributing the razors, Parsons inspected them to make sure they were not damaged and that there were covers on them.

At 9:57 a.m., Parsons began to collect the razors that he distributed to the inmates. When Parsons went to cell six to collect Brcic's razor, he discovered Brcic on a bench in the back of the cell, injured and bleeding heavily. Parsons called for backup, and another corrections officer, Mari LaCross, called 911 and notified the sheriff about the situation.

Lieutenant Andrew Lalonde, Lieutenant Josh Ginop, and Deputy Lacy Beaudoin were dispatched to cell six. When they entered the cell, Brcic was alone, unconscious, and bleeding from his wrist. The officers lowered Brcic to the floor to assess him. Lalonde then noticed that the handle portion of the razor that had previously been distributed was stuck to Brcic's forehead. Brcic became slightly responsive and started mumbling as the officers rendered first aid while waiting for medics to arrive. Ultimately, EMS took Brcic to a hospital.

Lalonde and other officers searched cell six for the remaining pieces of the razor. The officers initially located a few broken pieces of the razor's orange handle in the cell. Lalonde then found the blade of the razor, which had been removed from the razor head, in the bottom of the toilet in cell six. He took the razor blade and razor handle pieces into evidence. Brcic was charged with PPW as a fourth-offense habitual offender, MCL 769.12.[2]

A jury convicted Brcic of PPW. The sentencing guidelines recommended a minimum sentence range between 14 and 58 months, and Brcic was sentenced at the top of that range, to 58

---

[1] These charges are at issue in Docket No. 366230.

[2] This is the charge at issue in Docket No. 362727.

months to 25 years in prison as a fourth-offense habitual offender. In explaining its rationale for imposing this sentence, the trial court emphasized "the seriousness of the circumstances both of the offense and the offender" and "consider[ed] [Brcic's] criminal history." The trial judge noted that even though Brcic "did not actually harm anybody other than [him]self," Brcic's possession of the razor created a "serious risk of harm."

Meanwhile, this Court had granted the prosecution's application for leave to appeal the suppression issue in Docket No. 366230 and affirmed the trial court's order of suppression. *Brcic*, 342 Mich App at 282. On August 15, 2022, the Michigan Department of Corrections sent a speedy trial notice (180-day notice) to the prosecution, stating that Brcic's trial must occur no later than February 10, 2023. However, the trial court set Brcic's trial to commence on March 8, 2023. Brcic filed a motion dismiss, citing his constitutional right to a speedy trial and the 180-day rule. The trial court attributed the delays in proceedings to the stay that was in place pending a decision on interlocutory appeal and to the backlog created by the COVID-19 pandemic, noting that "jury trials were forbidden for a period of time and were unsafe for a period of time." The trial court denied the motion.

Brcic's jury trial began on March 8, 2023, and on March 9, the jury found Brcic guilty of OWI-3rd and all other charges. For OWI-3rd, the sentencing guidelines recommended a minimum sentence of between 19 and 76 months, and the trial court sentenced Brcic to 25 to 50 years, with credit for 755 days served. In explaining the reason for its sentence, the trial court detailed Brcic's drunk driving history and opined that the sentences previously imposed for these offenses "have not kept th[e] community safe from Mr. Brcic." The court believed the guidelines did not "adequately account for the danger [Brcic] presents to [his] community," stating:

> Here during the daylight hours at an area of public recreation with pedestrians nearby defendant was driving recklessly, too fast, swerving his car, nearly striking some teenagers, and then crashed. Thankfully no one was hurt but that's not through any actions of Mr. Brcic. You know, and really, I have to reflect here . . . I do not believe that the law requires us to wait until Mr. Brcic kills someone Drunk Driving before we do something about his absolute and utter refusal to stop doing it.

The trial court also highlighted Brcic's habitual offender status, explaining:

> Also, I'm taking into consideration certain habitual violent offenders have a 25-year mandatory minimum . . . . I mean Mr. Brcic in my judgement presents just as much risk of harm to the community as a fourth violent offender does. So, therefore that's my reasonings for a departure and the extent thereof by analogy to some of the habitual statutes.

This consolidated appeal followed.

-4-

II.  WE FIND NO MERIT IN BRCIC'S CLAIMS RELATED TO HIS CONVICTIONS

We begin first by addressing Brcic's legal claims related to the integrity of his convictions, namely, sufficiency of the evidence and right to a speedy trial.  We find neither claim has merit and affirm his convictions.

A.  SUFFICIENT EVIDENCE WAS PRESENTED TO SUPPORT BRCIC'S PPW CONVICTION

Brcic argues insufficient evidence was presented to support his PPW conviction because he was authorized by the jail staff to possess the shaving razor.  We disagree.  The PPW statute, MCL 801.262(2), provides:

> Unless authorized by the chief administrator of the jail, a prisoner shall not possess or have under his or her control any weapon or other item that may be used to injure a prisoner or other person, or used to assist a prisoner in escaping from jail.

A conviction under this statute requires a showing of two elements: first, that the defendant was a prisoner in the jail, and second, that the defendant knowingly possessed a weapon or an item that could be used to injure another person or used to assist an escape from a jail.  MCL 801.262(2).

When viewing the evidence in the light most favorable to the prosecution, *People v Alter*, 255 Mich App 194, 201-202; 659 NW2d 667 (2003), sufficient evidence was presented at trial to support the jury's guilty verdict.  Brcic was a prisoner in the jail and neither party contests that.  The record reflects Brcic obtained a razor through lawful means under the Inmate Rule Guide.  But the record also reflects that Brcic manipulated the razor such that it only consisted of the blade, and as a result, was in violation of those same inmate rules.  In deconstructing his razor, Brcic was no longer acting with jail authorization.  By possessing a razor *blade*, Brcic possessed a weapon or item that *could be* used to injure another person.  *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) ("The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.").  That he used the razor blade to injure himself does not negate the direct and indirect evidence that Brcic knowingly possessed a weapon while in jail.  We affirm his PPW conviction.

B.  BRCIC'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED

Brcic argues that 31 months of pre-trial incarceration violated both his constitutional and statutory rights to a speedy trial.  We disagree.

1.  STANDARD OF REVIEW

"A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal."  *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted).  Brcic properly preserved this issue by filing and arguing a motion alleging a violation of his speedy trial rights.  "Whether defendant was denied his right to a speedy trial is an

issue of constitutional law, which we [] review de novo." *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). The trial court's factual findings are reviewed for clear error. *Id*.

## 2. BRCIC CANNOT SHOW A VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL

Both the United States and Michigan Constitutions guarantee Brcic the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 16. In *Barker v Wingo*, 407 US 514, 530; 92 S Ct 2182; 33 L Ed 2d 101 (1972), the United States Supreme Court identified four factors to assist the Court in determining whether a violation of the right to a speedy trial exists: "(1) length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." These factors were adopted by the Michigan Supreme Court in addressing speedy trial arguments. *Williams*, 475 Mich at 261. No single factor is "either a necessary or sufficient condition to" a meritorious speedy-trial claim. *Barker*, 407 US at 533. Rather, courts must "engage in a difficult and sensitive balancing process." *Id*.

The first and third factors favor Brcic, as he was incarcerated for 31 months prior to trial and invoked his speedy trial rights during that incarceration. *People v Wickham*, 200 Mich App 106, 109; 503 NW2d 701 (1993). The prosecution thus bears the burden of rebutting the presumption of prejudice. *Id*. at 109-110. In balancing the remaining *Barker* factors, however, we conclude that the prosecution has rebutted the presumption of prejudice and Brcic was not deprived of his constitutional right to a speedy trial. *Id*.

The second *Barker* factor looks to the reason for the delay. When "assessing the reasons for the delay, this Court must examine whether each period of delay is attributable to the defendant or the prosecution." *People v Waclawski*, 286 Mich App 634, 666; 780 NW2d 321 (2009). Delays that are unexplained should be attributed to the prosecution, as well as delays caused by docket congestion. *Id*. With respect to the latter category, however, "delays inherent in the court system . . . are given a neutral tint and are assigned only minimal weight in determining whether a defendant was denied a speedy trial." *Williams*, 475 Mich at 263 (quotation marks and citations omitted).

The trial court walked through a timeline of each delay on the record to determine which party contributed to or caused the delays. In doing so, it ultimately attributed a large portion of the delay to the stay of trial proceedings pending an outcome on interlocutory appeal and COVID-19 related adjournments, both of which the trial court correctly treated as neutral. See *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 5. In balancing the neutral delays against those caused by the parties, the trial court correctly determined that second *Barker* factor weighs against Brcic.

Finally, the fourth factor looks to the prejudice Brcic suffered. "There are two types of prejudice which a defendant may experience, that is, prejudice to his person and prejudice to his defense." *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). Brcic argues that he was incarcerated for 259 days for which he was not entitled to receive any credit toward his 25-year minimum sentence. However, that is in part due to Brcic committing an additional offense while

incarcerated. Brcic also claims prejudice from the delay in his ability to present a defense,[3] specifically, that he was not the person who had been driving on the day of his drunk driving arrest. That prejudice is not borne out by the record because there was no evidence to corroborate that anyone other than Brcic was driving the Tahoe. Brcic initially admitted to law enforcement that he was driving the Tahoe and was its sole occupant, and the three minors' testimony placed Brcic in the driver's seat of the Tahoe at the time of the crash.

On balance of the *Barker* factors, Brcic was not deprived of his constitutional right to a speedy trial.

### 3. BRCIC CANNOT SHOW A VIOLATION OF HIS STATUTORY RIGHT TO A SPEEDY TRIAL

In addition to the constitutional guarantee of a speedy trial, MCR 6.004 provides:

> (A) The defendant and the people are entitled to a speedy trial and to a speedy resolution of all matters before the court. Whenever the defendant's constitutional right to a speedy trial is violated, the defendant is entitled to dismissal of the charge with prejudice.
>
> \* \* \*
>
> (C) Delay in Felony and Misdemeanor Cases; Recognizance Release. In a felony case in which the defendant has been incarcerated for a period of 180 days or more to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, or in a misdemeanor case in which the defendant has been incarcerated for a period of 28 days or more to answer for the same crime or a crime based on the same conduct or arising from the same criminal episode, the defendant must be released on personal recognizance, unless the court finds by clear and convincing evidence that the defendant is likely either to fail to appear for future proceedings or to present a danger to any other person or the community.

MCR 6.004(C) specifically dictates the "180-day rule" codified in MCL 780.131 and provides several exclusions from the computation of the 180-day period, including periods caused by or "concerning the defendant," adjournments "requested or consented to by the defendant's lawyer,"

---

[3] Although not raised by Brcic, this record arguably contains evidence of personal prejudice to Brcic given his attempt to end his life and his deteriorating mental health during his extensive pretrial incarceration. As noted by the dissent in *People v Bonds*, 987 NW2d 874 (Mich, 2023) (BOLDEN, J., dissenting), personal prejudice tends to be overlooked when applying *Barker* and here, it was not addressed in the briefing to this Court or by the trial court. As a result, this case, at least at present, is not an apt vehicle to provide guidance as to "how courts should weigh personal prejudice in cases where there is no apparent evidence of trial prejudice." *Id.*

and "other periods of delay that in the court's judgment are justified by good cause, but not including delay caused by docket congestion." MCR 6.004(C)(1), (3) and (6).

"[T]he statutory 180-day period is, by the plain terms of the statute, a fixed period of consecutive days beginning on the date when the prosecutor receives the required notice from the DOC." *People v Lown*, 488 Mich 242, 247; 794 NW2d 9 (2011). "[T]he rule does not require that a *trial* be commenced or completed within 180 days of the date notice was delivered. Rather, as [our Supreme Court] has held for more than 50 years, it is sufficient that the prosecutor 'proceed promptly' and 'move [] the case to the point of readiness for trial' within the 180-day period." *Id.* at 246, quoting *People v Hendershot*, 357 Mich 300, 304; 98 NW2d 568 (1959) (alteration in original). "[A] prosecutor must proceed promptly and take action in good faith in order to satisfy the rule." *Lown*, 488 Mich at 246. "[G]ood faith is an implicit component of proper action by the prosecutor, who may not satisfy the rule simply by taking preliminary steps toward trial but then delaying inexcusably." *Id.*

The record supports the prosecution acted in good faith. The prosecution did not file an excessive number of pretrial motions or any obviously frivolous motions to delay Brcic's trial. The prosecution did not request an excessive number of adjournments after receiving the 180-day notice. Therefore, Brcic's statutory right to a speedy trial was not violated.

## C. BRCIC'S STANDARD 4 CLAIMS FAIL

Brcic also filed a supplemental appellate brief *in propria persona*, otherwise known as a Standard 4 brief,[4] alleging violations of his Fourth and Fifth Amendment rights, lack of jurisdiction, ineffective assistance of counsel, and insufficient evidence. The Standard 4 brief lacks legal support or analysis and each claim raised fails on its merits.

Brcic argues his Fifth Amendment rights were violated by way of an unconstitutional "show up" identification. Generally, a "show up" involves the police providing a single image or individual to an eyewitness for identification purposes. Here, the opposite happened. The minors pointed out a single individual to the police. Additionally, Brcic claims the minors' identification of him is unreliable because they admitted they did not see who was driving because the vehicle came from behind. This claim is not supported by the record. The minors who testified at trial stated that they saw Brcic as he drove past and identified the person in the water as "the same person that swerved at us."

Brcic also argues that during interactions with officers, he was never read his *Miranda*[5] rights. This is true. Once Brcic was handcuffed and brought ashore, he was largely questioned about the extent of his injuries by a paramedic. However, there is an exchange where Chamberlain and another officer questioned Brcic about who else was in the vehicle and where Brcic met that person. To some extent, these could be categorized as questions to assess whether there was ongoing emergency, an exception to the *Miranda* requirement, *People v Attebury*, 463 Mich 662,

---

[4] See Administrative Order No. 2004-6, 471 Mich c, cii (2004).

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

670; 624 NW2d 912 (2001). But asking where Brcic met someone may fall outside that exception because it has little to do with the immediate need to protect public safety. Still, even if we assume it was a custodial interrogation and that some or all of these statements could have been suppressed, their admission seemed to be trial strategy by defense counsel. The defense was the first to use Brcic's statement at trial—that Brcic initially said to police there was a different driver—and defense counsel revisited that statement in closing. Brcic does not claim ineffective assistance of counsel in this regard[6] and in fact, Brcic argues in his Standard 4 brief that he wanted his attorney to do *more* to emphasize that there was another driver. As a result, Brcic's claim that the admission of his statements to police violated his Fifth Amendment rights lacks merit.

Brcic next argues that after leaving the hospital, Cheboygan officers placed him under arrest without officers from the Michigan State Police or Emmett County Sheriff present. Therefore, he claims, Cheboygan officers were acting outside their jurisdiction such that his arrest violated the Fourth Amendment. Brcic also argues that Officer Stacks searched his truck without a warrant or permission and that there was no probable cause to arrest him. Brcic is incorrect. As to the search of his truck, it is not clear from the record that a warrantless search of his vehicle took place and what, if any, evidence was used at trial from the alleged warrantless search. We decline to address this issue further and we also take no issue with his arrest. Brcic was arrested in the course of committing ongoing violations of the law—public intoxication and resisting and obstructing are the most apparent from the body camera footage played at trial. As to the out-of-jurisdiction claims, even if one or more of the arresting officers was acting outside his jurisdiction, the police testified to this being a joint operation with permission of all parties. This is permissible under MCL 764.2a.

Finally, Brcic argues that he was never given "advice of rights" by medical staff after objecting to treatment. Beyond this blanket assertion, Brcic fails to state any violation of law for which he is entitled to recovery. Further, the medical records he attaches to his Standard 4 brief note that Brcic gave permission for a blood draw and other relevant testing, and trial testimony confirmed the same. Brcic is not entitled to relief on any of these claims.

## III. BRCIC'S SENTENCES FOR PPW AND OWI-3RD ARE DISPROPORTIONATE[7]

Brcic argues that he has overcome the presumption of proportionality for his within-guidelines sentence for PPW and that the trial court failed to adequately consider mitigating

---

[6] Brcic does claim he received ineffective assistance of counsel because his attorney never objected when requested in part because his attorney was working at the prosecutor's office when Brcic was arrested, creating a conflict of interest. The opposite scenario, a defense counsel going to work for the prosecution, creates a presumption of prejudice. *People v Davenport*, 483 Mich 906; 762 NW2d 163 (2008). This scenario does not, at least not without more information. Further, it appears from Brcic's pleading that the conflict, if any, was waived as it was relayed to him by his counsel and representation continued. See generally MRPC 1.9, 1.10. This argument fails.

[7] Brcic also contends that his sentences are unconstitutional, but because he fails to adequately develop these claims, we consider them abandoned. *Twp of Grayling v Berry*, 329 Mich App 133,

factors. He further argues that his 25-year minimum sentence for OWI-3rd is disproportionate and that the reasons cited by the trial judge at sentencing for the departure were insufficient to justify that departure. We agree.

## A. APPELLATE REVIEW OF SENTENCES, GENERALLY

"Sentencing decisions are reviewed for an abuse of discretion." *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome[,] and the trial court may not deviate from that principled range of outcomes." *Id*. A trial court abuses its discretion by violating the "principle of proportionality," which requires that a sentence be proportionate to the seriousness of the offense and the circumstances of the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017); see generally *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990).

This review, a "reasonableness" review, applies to both sentences within and outside the guidelines. *Steanhouse*, 500 Mich at 473-477. The sentencing guidelines are only advisory; however, those guidelines "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). There are also four "basic sentencing considerations" for the trial court: reformation of the offender, protection of society, discipline of the offender, and deterrence of others from committing the same offense. *Boykin*, 510 Mich at 188.

A within-guidelines sentence carries a rebuttable presumption of proportionality. *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023) (opinion by BOLDEN, J.).[8] "[T]he defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359. "A defendant may overcome the presumptive proportionality of a within-guidelines sentence by 'present[ing] unusual circumstances that would render the presumptively proportionate sentence disproportionate.' " *People v Ventour*, 349 Mich App 417, 430; 27 NW3d 660 (2023), citing *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted).

For sentences that depart from the guidelines, by contrast, there is no presumption of proportionality. We review "whether a departure sentence is more proportionate than a sentence

---

154-155; 942 NW2d 63 (2019). And under the doctrine of constitutional avoidance, because we grant relief applying a proportionality analysis, we would decline to address the constitutional claims regardless. *Dep't of Health and Human Services v Genesee Circuit Judge*, 318 Mich App 395, 407; 899 NW2d 57 (2016).

[8] Justice BOLDEN's plurality opinion, joined by Justice BERNSTEIN, is not binding on its own, but in concurring opinions, Justices CAVANAGH and WELCH agreed that within-guidelines sentences carry a rebuttable presumption of proportionality. See *Posey*, 512 Mich at 361 (CAVANAGH, J., concurring); *id*. at 390, 411-414 (WELCH, J., concurring). Our Court, therefore, treats the principles announced in Justice BOLDEN's lead opinion as controlling. See *People v Posey (On Remand)*, 349 Mich App 199, 203; 27 NW3d 137 (2023); *People v Purdle*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 3-4.

within the guidelines range," including "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted). And "[e]ven where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality." *Milbourn*, 435 Mich at 660.

## B. BRCIC'S WITHIN-GUIDELINES SENTENCE FOR PPW IS DISPROPORTIONATE

For Brcic's PPW offense under MCL 801.262(2), the sentencing guidelines recommended a minimum sentence range of 14 to 58 months. The trial court sentenced Brcic to 58 months to 25 years as a fourth-offense habitual offender. Although this sentence was within (at the top of) the guidelines, we find that Brcic has overcome the presumption of proportionality and has thus demonstrated that this within-guidelines sentence is unreasonable.

To start, it is worth revisiting *Milbourn*. There, the Michigan Supreme Court highlighted two general principles of proportionate sentencing: (1) the most serious crimes get the most severe punishments and (2) "offenders with prior criminal records are likewise subject to harsher punishment than those with no prior convictions." *Milbourn*, 435 Mich at 650. In applying the principle of proportionality, the Court looked first to the facts of the case and observed that the burglary offense at issue was atypical in a way that was mitigating: "Milbourn broke into an apartment in which he himself had resided for the apparent purpose of making an emotional and destructive statement . . . . The . . . accompanying . . . acts . . . were visited against property rather than persons." *Id*. at 667-668.

By comparison, this Court also considered the circumstances of the offense in *Posey*, where on remand, the within-guidelines sentence was affirmed. Posey "set off a gunfight in a public space outside a supermarket," behavior placing him at the more extreme end of the broad range of criminal conduct that assault with intent to murder encompasses. *People v Posey (On Remand)*, 349 Mich App 199, 205; 27 NW3d 137 (2023).

The facts underlying Brcic's PPW are more like the circumstances in *Milbourn* than in *Posey*, albeit involving a different crime. As the trial court stated:

> Here I think it is, you know, certainly relevant that you did not actually harm anybody other than yourself. When the officers did respond into the cell, the razor was in the toilet which indicates to me that there wasn't a present intention, at that time at least, for you to use that on anybody else. You had discarded it.

Just as the facts in *Milbourn* "[did] not constitute a typical burglary," *Milbourn*, 435 Mich at 667, the trial court's observations here highlight the fact that Brcic's offense conduct did not constitute a typical PPW. Indeed, not only does the evidence show, as the trial court recognized, that Brcic had no intent to harm anyone other than himself, but the record also demonstrates that Brcic initially obtained the razor lawfully and had no cellmates at the time of his offense whom he could have harmed or who would have had access to the razor. Put simply, Brcic lacked intent and opportunity to harm another. In the "broad range of criminal conduct" encompassed by the PPW

statute, Brcic's behavior is at the least extreme end. *Milbourn*, 435 Mich at 668. The trial court seemed to acknowledge as much:

> You know, if I were sentencing somebody for this exact crime today without that criminal history, what sentence to pick would be very, very difficult. *It might even call for a downward departure*; I don't know. I don't know. I go back and forth on that to be honest. [Emphasis added.]

It was Brcic's criminal history that changed the trial court's course. The trial court said that the circumstances of the offense and Brcic's criminal history "point in different directions." At sentencing, Brcic was 44 years old with seven felonies and eleven misdemeanors spanning from 1992 to 2022. As a result of this criminal history, Brcic was assessed points for all prior record variables (PRVs), other than PRV 1 and 7, which were scored zero points. Further, the trial court had already assessed offense variable(OV) points for OV 19, which was scored 25 points because "[t]he offender by his or her conduct threatened the security of a penal institution or court." MCL 777.49. This increased Brcic's guidelines on the PPW sentencing grid.

We agree with the trial court that the circumstances of the offense and the circumstances of the offender "point in different directions." However, Brcic's criminal history is reflected in the prior record variable scoring and notably, despite his poor history, some of those prior record variables remain scored at zero. The negative circumstances of the offense are also accounted for in the guidelines—with the court scoring OV-19 at 25 points. Put differently, a presumptively proportionate minimum sentence as high as 58 months considers most if not all of the negative circumstances of the offender. What is not reflected in the guidelines is that Brcic lawfully obtained the razor, did not have a cellmate, used the razor against himself alone with the intent of ending his life, and disposed of the razor in his toilet before his injuries immobilized him. Taken individually each enumerated circumstance could be uncommon or rare when sentencing a prisoner for possession of a weapon. Taken together, they" 'present unusual circumstances that . . . render [a] presumptively proportionate sentence disproportionate.' " *Ventour*, 349 Mich App at 430, quoting *Bowling*, 299 Mich App at 558. This is particularly true where Brcic's actions taken against himself have an explanation, and a mitigating one at that. The trial court heard Brcic detail the depth of his mental illness during his allocution:

> I've talked to officers saying that I need help. I've wrote many medical kites saying I need help. Somebody help me. In fact, on the day moments, minutes before this incident, I called my attorney begging for help. Send me to the hospital. I need to go to the mental hospital; somethings wrong. Minutes, just seconds before this happened. And I also didn't—don't have the ability to call that 811 number that has just come for mental illnesses that (inaudible) address by public or anybody. I don't have that ability. I wish I would have. I called the emergency lines on the phone begging for help. I didn't receive any. I didn't get no help. I asked multiple times to talk to the mental health. They might come once a week, maybe even once every two, three months; they're not on a set schedule.

Brcic's presentence investigation report (PSIR) likewise evidences his psychiatric history. And it is clear from the record and the circumstances of the offense that substance abuse and mental health remain ongoing issues for Brcic.

-12-

The prosecution discourages this Court from considering that this was a case of self-mutilation brought about by suicidal intent, noting that "the PPW statute does not require that the defendant intend to harm others or attempt escape with the weapon to be guilty." In making this assertion, however, the prosecution seems to conflate Brcic's conviction with his sentence. We agree that there was sufficient evidence to support the jury's verdict. That Brcic attempted to take his own life in part due to serious mental illness and without the opportunity or intent to physically harm another individual are the circumstances of the offense. We *must* consider the circumstances of the offense and the offender to assess whether a sentence is reasonable. *Posey*, 512 Mich at 356 (stating that "proportionality must be measured according to the offense and the offender, not according to the sentence's relationship to the guidelines"). And while the sentencing court need not expressly consider mitigating evidence, *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 380 (2019), it is also true that Brcic's sentencing was one where there were circumstances of the offense or the offender, available on the record and included within documents the sentencing court *must* consider,[9] that are *only* mitigating. See *People v Bennett*, 335 Mich App 409, 436; 966 NW2d 768 (2021) (GLEICHER, J., concurring) ("Mental illness is universally recognized by courts and legislatures as a mitigating factor in sentencing considerations. Judicial recognition that mental illness is mitigating rather than aggravating is abundant.").

As the trial court itself acknowledged, the circumstances of the offense did not call for a harsh sentence and perhaps even justified a downward departure. As stated, we agree with the trial court that Brcic's criminal history points in the other direction. But Brcic's criminal history is not so substantial as to justify a minimum sentence of 58 months, a sentence at the top of the guidelines range, for the particular offense conduct and circumstances presented in this case.

We therefore conclude that the trial court abused its discretion by applying the law in a manner unsupported by the facts as found and imposing a sentence that is not proportionate to the unusual circumstances of the offense and the circumstances of the offender. *Ventour*, 349 Mich App at 430. There is no "single correct outcome" for the trial court on remand. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003), and we do not limit the trial court's discretion in sentencing Brcic on remand any further than to say a minimum of nearly five years in prison is disproportionate given the circumstances of Brcic's offense and of Brcic as an offender. For these reasons, Brcic is entitled to resentencing on his PPW conviction.

## C. BRCIC'S 25-YEAR MINIMUM SENTENCE FOR OWI-3RD IS DISPROPORTIONATE

For the OWI-3rd conviction, the trial court sentenced Brcic to 25 to 50 years[10]—an approximately fourfold upward departure from the upper end of the minimum sentencing guidelines recommended range of 19 to 76 months. We agree with Brcic that the sentence imposed is disproportionate.

---

[9] *People v Amos*, 42 Mich App 629, 632-633; 202 NW2d 486 (1972) (holding that a sentencing court must review the contents of PSIR before imposing sentence).

[10] Brcic received jail credit for 755 days served.

-13-

"Because the guidelines embody the principle of proportionality and the trial courts must consult them when sentencing, it follows that they continue to serve as a 'useful tool' or 'guideposts' for effectively combating disparity in sentencing." *Dixon-Bey*, 321 Mich App at 524-525. As stated, "relevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range . . . include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *Id*. at 525.

The trial court's serious doubts about Brcic's ability to reform are supported by the record and arguably either were not considered or were not given inadequate weight in the guidelines. When we review his prior criminal history, we see Brcic has been charged with and convicted of several drunk driving offenses, has completed Safe and Sober programming without long-term success, and has violated terms of probation or parole by consuming alcohol, committing domestic violence, or driving without a license. When he committed the instant offense, he had been paroled for only a matter of months. And there were some particularly dangerous circumstances with this offense, as observed by the trial court:

> Here during the daylight hours at an area of public recreation with pedestrians nearby defendant was driving recklessly, too fast, swerving his car, nearly striking some teenagers, and then crashed. Thankfully no one was hurt but that's not through any actions of Mr. Brcic.

Now, some of this *is* reflected in the guidelines. The trial court had already scored OV 9, in which Brcic was given 10 points for placing "2 to 9 victims . . . in danger of injury or loss of life." MCL 777.39(1)(c). PRV 2 and PRV 5 were scored for prior felony and misdemeanor convictions. Brcic was also given the highest score for PRV 3 for prior felony convictions. He had a PRV total of 75, the lowest possible point total for a PRV Level VI for a Class E offense. Nevertheless, the trial court correctly observed that the guidelines do not fully capture that Brcic is repeatedly engaging in the same type of criminal behavior and the future risk to the community this pattern of criminality may create. Here, Brcic is a repeat offender of (generally) one type of offense—he repeatedly drives drunk, endangering himself and his community.

Simply put, this case is not *Dixon-Bey*, where there was "*nothing* in defendant's background" or "the nature of defendant's offense . . . provid[ing] reasonable grounds for a departure." *Dixon-Bey*, 321 Mich App at 526 (emphasis added). Aspects of Brcic's criminal record and crime here *could* support *a* departure.[11] However, "[e]ven where some departure appears to be appropriate, the extent of it may constitute a violation of the principle of proportionality." *People v Cramer*, 201 Mich App 590, 597; 507 NW2d 447 (1993). We conclude that is the case here, as the trial court failed to justify the departure, and we cannot identify anything about this offense or offender that would make a 25-year minimum sentence reasonable.

---

[11] "[S]pecific characteristics of an offense and an offender that strongly presage future criminal acts" may justify an out-of-guidelines sentence, especially "if they are not already adequately contemplated by the guidelines." *People v Horn*, 279 Mich App 31, 45; 755 NW2d 212 (2008).

The trial court's own explanation for a 25-year minimum sentence analogized Brcic to a fourth-offense violent offender, MCL 769.12(1)(a):

> Also, I'm taking into consideration certain habitual violent offenders have a 25-year mandatory minimum . . . . I mean Mr. Brcic in my judgement presents just as much risk of harm to the community as a fourth violent offender does. So, therefore that's my reasonings for a departure and the extent thereof by analogy to some of the habitual statutes.

The analogy drawn by the trial court falls short. Although facts establishing that a defendant poses a risk to community safety in the future can, in appropriate cases, justify *some* departure from the guidelines, Michigan law also recognizes an important difference between conduct that carries a risk of harm and the actual commission of violence. Yet the trial court imposed a 25-year minimum sentence for Brcic's OWI-3rd offense, implicitly equating the seriousness of Brcic's high-risk but nonviolent habitual conduct to the seriousness of conduct committed by habitual violent offenders.

In so doing, the trial court may have supplied "adequate reasons to support *a* departure, but failed to justify the extent of this departure." *People v Smith*, 482 Mich 292, 295; 754 NW2d 284 (2008). Here, "the extent of the departure (rather than the fact of the departure itself) []embod[ies] a violation of the principle of proportionality," *Milbourn*, 435 Mich at 660, "and therefore constituted an abuse of discretion," *id*. at 667. Brcic is entitled to resentencing on his OWI-3rd conviction. *Id.* at 669-670; *People v Mason*, ___ Mich App ___, ___ NW3d ____ (2024) (Docket No. 367687); slip op at 5.

## D. JUDICIAL BIAS

Brcic claims the statements made at sentencing in both cases point to the trial judge's inability to treat Brcic fairly on remand and to maintain the appearance of justice. As such, he asks that both cases be remanded to a different judge for resentencing. We find no evidence of bias sufficient to justify remanding to a different judge for resentencing.

### 1. STANDARD OF REVIEW

To preserve the issue of judicial bias, a party should raise the issue to the trial court. MCR 2.003(D); *In re Contempt of Henry*, 282 Mich App 656, 679; 765 NW2d 44 (2009). Brcic did not raise this issue below; thus, it is unpreserved. *Id*. Unpreserved claims of judicial bias are reviewed for plain error. *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011). This requires the defendant to show that the plain error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Reversal is warranted only if the error resulted in the conviction of an innocent defendant or seriously affected the fairness, integrity, or

public reputation of the judicial proceedings. *Id*. The defendant bears the burden of persuasion regarding whether the error was prejudicial. *Id*. at 763.

## 2. BRCIC CANNOT ESTABLISH JUDICIAL BIAS BY THE TRIAL COURT

Brcic asserts that "[a]t both sentencings, the trial court made clear its personal disdain for Mr. Brcic." But, the only reference that Brcic points to as his basis for arguing bias in Docket No. 362727 is the judge's statement that "I'm, not sentencing anybody today; I'm sentencing you, Mr. Brcic." In Docket No. 366230, Brcic claims the imposition of a 25-year minimum sentence and the judge's "personal contempt for Mr. Brcic and his prior record" indicate bias, without stating *any* evidence of such. Because Brcic fails to articulate any evidence of bias beyond these blanket assertions, he has abandoned the issue and is not entitled to relief. *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998) ("An appellant may not merely announce his position and leave it to the Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority."). However, even if this issue were properly briefed, Brcic cannot demonstrate bias sufficient to warrant relief on this issue.

In determining whether a different judge should resentence a defendant, this Court considers:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotations omitted).]

There is some indication in the record that the sentencing judge has strong negative views about Brcic such that the judge will "have substantial difficulty putting out of his mind" on remand. *Id*. For example, in Docket No. 362727, the trial court stated, "I'm not sentencing anybody today; I'm sentencing you, Mr. Brcic[,]" and imposed a top-of-the-guidelines sentence when previously stating the facts may have supported a downward departure.

In Docket No. 366230, the trial court compares Brcic's history to habitual violent offenders:

> Also, I'm taking into consideration certain habitual violent offenders have a 25-year mandatory minimum. Here Mr. Brcic has prior violent offenses including violent felonies such as an adult sexual assault, a juvenile arson, misdemeanor assaultive crimes, as well as the extraordinary Drunk Driving history endanger (sic) I've outlined. I mean Mr. Brcic in my judgement presents just as much risk of harm to the community as a fourth violent offender does. So, therefore that's my reasonings for a departure and the extent thereof by analogy to some of the habitual statutes.

In making these statements, the trial court does not misapply the law, as it makes clear that Brcic is not actually a violent fourth offender. But it does seemingly state firmly held beliefs on Brcic: "in my judgement [, Brcic] presents just as much risk of harm to the community as a fourth violent offender does" to justify a drastic upward departure. This statement calls into question whether the judge would "reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected[.]" *Hill,* 221 Mich App at 398. These conclusions about Brcic, however, are tied in part to fact; Brcic does have a concerning criminal history consisting of repeatedly driving while intoxicated. Additionally, the conclusory statements about Brcic as a person were mostly isolated incidents. Compare *People v Walker*, 504 Mich 267, 286; 934 NW2d 727 (2019) (granting defendant's request for a new judge where the judge engaged in name-calling over six times and repeatedly admonished defendant). These incidents are not sufficient to meet the first or second *Hill* prongs.

Additionally, reassignment would result in waste and duplication out of proportion to any gain in preserving the appearance of fairness given Brcic's speedy trial claim and the fact that this appeal involves two consolidated but distinct cases. *Hill,* 221 Mich App at 398. Thus, this claim fails.

## IV. CONCLUSION

We affirm Brcic's convictions for PPW and OWI-3rd but we vacate the sentences issued for these convictions and remand for resentencing. We do not retain jurisdiction.

/s/ Adrienne N. Young
/s/ Daniel S. Korobkin

-17-